## BORG et al. v. INTERNATIONAL SILVER CO.

(District Court, S. D. New York. January 6, 1926.)

**1. Corporations ⊂⇒68—Own stock acquired by corporation held not retired.**

Where corporation acquired some of its own stock without taking any steps to retire it, under Corporation Law N. J. §§ 27, 29, 30, stock was not retired, but was asset of corporation which could be sold.

**2. Corporations ⊂⇒68—By-law prohibiting corporation from dealing in its own stock held not to retire stock purchased.**

By-law prohibiting corporation from dealing in its stock, even if intended to limit use of stock acquired by it, did not retire it, and on repeal of by-law stock could be used for best interests of corporation.

**3. Corporations ⊂⇒68—Corporation should not be deprived of use of its own stock, unless limitation on use is clear.**

Corporation should not be deprived of use of its capital stock, particularly where it has been created and maintained at large expense, unless limitation on its use is clear; presumption being that corporation may use it, and burden being on objectors to show contrary.

**4. Corporations ⊂⇒74—Stockholders have first right to subscribe to new stock only.**

Stockholders have first right to subscribe to new stock only, and not to treasury stock.

**5. Corporations ⊂⇒72—Whether it was better to sell treasury stock than to borrow held within discretionary powers of directors.**

Whether corporation needed additional money, and, if so, whether it was better to sell treasury stock than to borrow, was within discretionary powers of directors.

**6. Evidence ⊂⇒73—Until contrary clearly shown, directors are assumed to be actuated solely by best interests of stockholders.**

Position of director is one of trust for benefit of stockholders, and, until contrary is clearly shown, it must be assumed that directors are actuated solely by what in their judgment is best for stockholders.

In Equity. Suit by Sidney C. Borg and another, as copartners constituting the firm of Simon Borg & Co., suing on behalf of themselves and all holders of common stock of the International Silver Company, similarly situated, against the International Silver Company. On plaintiffs' motion for preliminary injunction. Motion denied conditionally.

Affirmed in 11 F.(2d) 147. See, also, 2 F.(2d) 910.

Cook, Nathan & Lehman, of New York City (Walter C. Noyes, of New York City, Lindley M. Garrison, of Jersey City, N. J., and Frederick F. Greenman, of New York City, of counsel), for plaintiffs.

Simpson, Thacher & Bartlett, of New York City (Julius M. Mayer, Graham Sumner, and Percival E. Cowan, all of New York City, of counsel), for defendant.

GODDARD, District Judge. This is a motion for a preliminary injunction restraining the International Silver Company from selling to the highest bidder 6,000 shares of its common stock, pursuant to an invitation for bids sent out to its stockholders and the general public under date of November 1, 1924, and "from preparing or * * * carrying out any further plans for the issuance of any common stock, * * * which shall have the effect of decreasing the interests of the holders of the common stock * * * in the surplus of the International Company." Exclusive of some 2,500 shares issued in June, 1923, which are the subject of other litigation, there are outstanding 60,285 shares of preferred and 6,853 shares of common stock of the defendant company. The plaintiffs and those associated with them are the holders of 3,889 shares of the common stock, which is less than one-half of the common stock now outstanding in the hands of the public, and less than 3 per cent. of the voting power.

The defendant company was organized in 1898 under the laws of the state of New Jersey, with an authorized capital of $20,000,000, $9,000,000 of preferred stock and $11,000,000 of common stock. The par value of each share was $100. The preferred stock has a preference as to dividends at the rate of 7 per cent. per annum, which are cumulative, and on distribution of assets to the par value plus any cumulative dividends then unpaid. The International Silver Company, hereinafter referred to as the International Company, shortly after its organization, issued $5,107,500, par value, of preferred stock, and $9,944,700, par value, of common stock. Between January 1, 1903, and January 9, 1903, the International Company issued for all the stock and bonds of the United States Silver Corporation $1,500,000 of its preferred stock and $2,000,000 of its debenture bonds. The United States Sil-

ver Corporation owned $515,800 of preferred stock and $9,068,400 of common stock of the International Company. This purchase was ratified by the affirmative vote of stockholders of the International Company holding more than 70 per cent. of the voting rights. On January 31, 1903, the board of directors of the International Company adopted the following resolution:

"The company shall be prohibited (except for retirement and for the purpose. of decreasing the capital stock as authorized by law) from buying, selling, or otherwise dealing in shares of its own stock, or from selling the shares of stock of any corporation, domestic or foreign, which shares may, from time to time, become the property of the company, and for which the stock of the company has been issued, except upon the consent in writing of stockholders of the company owning at least two-thirds of the voting rights of the capital stock, or except upon the vote of stockholders of record owning not less than two-thirds of the voting rights of the capital stock of the company, present or represented at an annual meeting of the stockholders, or at a special meeting of the stockholders duly called for the purpose."

In 1908 the International Company caused the United States Silver Corporation to be dissolved, and as the sole stockholder took over into its own treasury all the shares of stock which had previously been held by the United States Silver Corporation. The following resolution appears in the minutes of a meeting of the stockholders of the International Silver Company, held on March 26, 1913:

"The chairman also called attention to by-law 15 of this company, and to the fact that this by-law was inserted by reason of a requirement or suggestion of the New York Stock Exchange by a committee thereof in connection with the listing of the stock of the company upon said Exchange and suggested that as the stock of the company was no longer so listed it was desirable to strike this by-law out. The adoption of the following resolution was thereupon moved and seconded:

"Resolved, that the by-laws of this company be amended by striking out by-law 15 thereof. * * * "

This resolution was adopted by a vote of more than two-thirds of the capital stock of the company. The minutes of the meeting of the board of directors of the International Company, held on April 29, 1914, contain the following:

"Referring to amendment of by-law 13 and the addition of a new by-law, No. 15, adopted by the directors of this company at a meeting held Saturday, January 31, 1903, and. recorded on page 177 of the first record book of this company, which provided that those two by-laws cannot be amended without the approval of the stockholders; and

"Whereas, the stockholders did approve of an amendment by a vote at the annual meeting of the stockholders held March 27, 1913: It is

"Resolved, that the by-laws of this company be and hereby are amended by striking out by-law No. 15 thereof. * * * "

These 6,000 shares, which the directors now propose to sell, are part of the said $9,068,400, par value, common stock obtained from the United States Silver Corporation.

The company has accumulated a large surplus over and above its obligations on the preferred stock, and the plaintiffs contend that the issuing of additional common stock will dilute the 6,853 shares of common stock now outstanding, and, first, that the shares of its own stock, which the International Company thus obtained through the United States Silver Corporation, have been retired, or should have been retired, and as between the parties to this proceeding, should be regarded as retired, and that the International Company has now no right to sell or use them; second, that, if the International Company has the right to sell these shares of common stock, it must first offer them to the holders of the outstanding common stock before offering them to the holders. of the preferred stock or to strangers; and, further, that the dominant purpose of the directors is not to obtain money for the corporation, but is a mere pretext by which they seek to obtain common stock.

In deciding whether this preliminary injunction should be granted, it is necessary to consider whether the plaintiffs have a probable right, and, if so, is there a probable danger to that right. The facts, as well as the law, have been fully presented by exceptionally able counsel. Little, if anything further, can be adduced upon the trial, and which probably cannot be had for several. months owing to the congestion of the calendar; so it seems desirable at this time to give full consideration to the probable rights which might eventually be established upon a trial.

[1] The question first to be determined is whether this $9,068,400, par value, stock,

which the International Company got from the United States Silver Corporation upon its dissolution, is or should be regarded as between these parties, as retired stock, or whether it is treasury stock and an available asset of the company. Certainly up to January 31, 1903, the International Company had the right to acquire shares of its own stock which it had previously issued, and hold them in its treasury alive and unretired. The mere acquisition of the stock would not operate to retire it or to impose any obligation to retire it. It was an asset, and the company might have sold it. Enright v. Heckscher, 240 F. 863, 153 C. C. A. 549.

Of course, the stock could have been retired. Sections 27, 29, and 30 of the Corporation Law of New Jersey (P. L. 1896, p. 277) specifically provide that a corporation may decrease its capital stock and how it must be done. To retire the stock, the board of directors must act in favor of the decrease and call a meeting of stockholders at which two-thirds in interest of each class of stockholders, having voting powers, must vote in favor of the decrease, and the president and secretary must execute and file a certificate in the office of the secretary of state, together with the written assent of two-thirds in interest of each class of such stockholders. Section 30 of the same law provides that the corporation shall not "reduce its capital stock except as authorized by law." Not any of these steps were taken by the International Company or by any one in its behalf. In Knickerbocker Importation Co. v. State Board of Assessors et al., 74 N. J. Law, 583, at pages 589, 590, 65 A. 913, 915 (7 L. R. A. [N. S.] 885), the court said:

"The 'Act concerning corporations' (Pamph. L. 1896, p. 277, §§ 27, 29, 30) provides for the method of retiring, reducing, or decreasing capital stock. It throws certain safeguards about, and imposes certain restrictions upon, such changes and alterations in the corporate organization, requiring certain proceedings on the part of both directors and stockholders, and notice by publication, and expressly providing against the release from liability of stockholders for unpaid stock, and against the release from obligations of the corporation to the state.

"In Siegman v. Electric Vehicle Co., decided at this term of this court [72 N. J. Eq. 403] 65 A. 910, Mr. Justice Pitney, speaking for this court and referring to the reduction of capital stock in connection with sections 27, 29, and 30 of the 'Act concerning corporations' (Revision of 1896), says: 'Taking the three sections together, they are designed to make sure—first, that capital shall not be reduced by indirection nor without deliberate and considered action taken for that avowed purpose, first by the directors and afterwards by two-thirds in interest of the stockholders, each stockholder having reasonable notice of the meeting and of the purpose for which it is called; and, secondly, that formal written evidence of the action taken is to be lodged with the secretary of state and published in a newspaper, to the end that all the world may be apprised thereof.'

"Irrespective of the prohibitions contained in section 30 of the Corporation Act, the creation by the Legislature of a precise method by which, under certain conditions, stock may be retired and canceled, is a clear expression of an intention that such corporation shall accomplish this same result in no other way. * * * Stock once issued is and remains outstanding until retired and canceled by the method provided by statute for the retirement and cancellation of capital stock; and the words 'retirement' and 'cancellation,' wherever used in the Franchise Tax Act, or in the amendment of that act in the Laws of 1906, to which we have been referred (Pamph. L. p. 31), must be interpreted to mean permanent retirement and actual cancellation by the method and in full compliance with the provisions of the statute."

The stock was not retired; there was no attempt to retire the stock; there was not a mere technical oversight, such as in the case of Meisenheimer v. Alexander, 162 N. C. 226, 78 S. E. 161, where the directors and two-thirds in interest of each class of stockholders and the officers had taken the steps prescribed in the North Carolina statute for decreasing the capital stock, and had filed the proper certificate in the office of the secretary of state, but had omitted to publish the certificate in a newspaper as called for under the statute, or as in Dunn v. Acme Auto & Garage Co., 168 Wis. 128, 169 N. W. 297, which dealt with a situation under the Wisconsin statute, and where apparently the directors and stockholders had authorized or agreed to the retirement.

[2] The plaintiffs further contend that, even if this stock was not actually retired, it should be treated between the parties to this motion as retired stock by reason of the said resolution of January 31, 1903. The position of the plaintiffs is that the resolution of the directors, passed on January 31, 1903, estopped the International Company from selling the stock which came into its actual pos-

session in 1908 upon the dissolution of the United States Silver Corporation.

However, they (the plaintiffs) have allowed the company to continue to pay the annual tax on this stock, which in the aggregate has amounted to a substantial expense. The financial reports of the company, which have been sent year after year to them, indicated that the stock was still alive and not retired. Yet no move was made by them to have it retired.

It is not at all clear that it was contemplated that the resolution of January 31, 1903, would limit the use of the stock obtained from the United States Silver Corporation, and which, for all practical purposes, the International Company obtained when it bought all the capital stock of the United States Silver Corporation. This purchase was made a few weeks before the resolution was passed, even though the International Company did not get actual possession of the stock until 1908, when the United States Silver Corporation was dissolved.

Vice Chancellor Pitney, referring to this situation, in O'Connor v. International Silver Co., 68 N. J. Eq. 67, at page 69, 59 A. 321, 322, says: "I am unable to perceive the least difference, in the view of a chancellor who disregards the shell and looks at the substance of things, between the case in hand and that where the shares of stock in a corporation are bought directly by it and assigned to it."

The spirit and purpose of article 15, I think, was indicated in the stockholders' own resolution, which repealed it, to have been to satisfy a request of the New York Stock Exchange, when the stock was listed in 1903, but which became unnecessary after the stock was no longer listed, and therefore repealed. By-law 15 was passed by the directors, and not by the stockholders; and even if we were to assume that its purpose was to limit the use of the stock which came to the International Company through the United States Silver Corporation, and that they intended to have this stock put into the retired class, the stock was not retired. It only remained dormant, and the resolution of 1913 had the effect of removing any possible limitation upon it, and restoring it to its normal status, for such use as might be for the best interest of the company.

[3] It is conceivable that a situation might arise where stock might not be regarded as retired from a taxation standpoint, and yet should be treated as retired as between stockholders; but I am not convinced that such is the case here. I am sure that a stock corporation should not be deprived of the use of its capital stock, particularly where it has created and maintained it at large expense, as was done here, unless the limitation upon its use is clear; and I believe I may go so far as to state that the presumption is that the corporation may make use of such stock, and that the burden would be upon the objectors to show to the contrary.

[4] Holding, as I do, that the stock in question is old, fully paid stock, the stockholders have no right to insist that it be offered to them before being sold to the public. The rule that stockholders have the first right to subscribe to stock when issued applies only to new stock. Wall v. Utah Copper Co., 70 N. J. Eq. 28, 62 A. 533; Stokes v. Continental Trust Co., 186 N. Y. 285, 78 N. E. 1090, 12 L. R. A. (N. S.) 969, 9 Ann. Cas. 738. And such stock may be sold for less than par. Enright v. Heckscher, 240 F. 863, 153 C. C. A. 549. The method of selling the stock to the highest bidder is admittedly not open to objection, if the stock is to be sold, and without first giving the stockholders the opportunity to buy it.

[5, 6] Whether the defendant company needed additional money, and, if so, was it better to sell stock than to borrow, is within the discretionary powers of the board of directors; and while the plaintiffs impute to the directors an ulterior purpose, and allege that they are not acting in the interest of the company, from all that appears there may be an honest difference of opinion as to what is best for the company. The position of director is one of trust for the benefit of the stockholders, and, until the contrary is clearly shown, it must be assumed that they are actuated solely by what, in their judgment, is best for the stockholders.

Accordingly the motion for a temporary injunction is denied. However, if the plaintiffs desire to have this matter reviewed on appeal, an application will be considered to restrain the defendant from accepting any offer to purchase the stock pending the determination of the appeal.