G. W. WRIGHT AND WIFE, AMY S. WRIGHT, v. PHILLIPS FERTILIZER COMPANY ET AL.

(Filed 2 March, 1927.)

1. Corporations—Minutes of Meeting—Directors—Estoppel.

Where a director of a corporation has attended a meeting at which by resolution he has written himself, properly passed, his monthly salary has been fixed in a certain sum for the period of a year, and he has continued his employment thereunder without objection, he is by his acquiescence estopped to deny that the salary so fixed for the period stated in the ordinance was for a period of five years, and after several years maintain his action to recover the difference for that period and the smaller sum he has continued thereafter to draw.

20—193

**2. Same—Mismanagement—"Surplus Fund."**

Where a director of a corporation has acquiesced in a resolution drawn by himself, properly passed and recorded, providing for the issuance of preferred stock to cover a loss alleged to have been sustained by mismanagement of the former officers or directors of the corporation, he is estopped to recover his proportionate part of the alleged loss.

**3. Same—Parol Evidence.**

The principle that the written minutes of the meetings of a board of directors of a corporation may be corrected by parol evidence to speak the truth, does not apply when a member of the board is estopped by his acts and conduct in giving assent to the resolution in question.

CIVIL ACTION, before *Nunn, J.,* at October Term, 1926, of BEAUFORT.

The defendant, Phillips Fertilizer Company, was organized in 1915. At the time of the organization of the company the stockholders were George A. Phillips, Fenner T. Phillips and Amy S. Wright. The plaintiff, George W. Wright, acted as proxy for his wife at all meetings of the directors and stockholders. The plaintiff, George W. Wright, was a nephew of the other stockholders, G. A. Phillips and Fenner T. Phillips, and was employed by the company upon its incorporation. At the annual meeting of the directors of the company on 2 January, 1917, the minutes show that on motion, duly adopted, G. W. Wright was to be paid a salary of $1,500 for the year 1917. At a meeting, held on Tuesday, 8 January, 1918, the minutes show: "On motion, duly seconded, it was ordered that G. W. Wright be paid a salary of $2,500 for the year 1918." At the meeting of the directors on 7 January, 1919, the minutes show that: "It was ordered that George W. Wright be paid a salary of $5,000 for the year 1919." At a stockholders' meeting held on 6 January, 1920, there was an increase of the capital stock, and G. W. Wright subscribed for forty shares thereof. The minutes of this meeting further disclosed that the plaintiff, G. W. Wright, was elected vice-president of the company; and, further, that "on motion, duly seconded, it was ordered that G. W. Wright be paid a salary of $6,500 for the year 1920."

The by-laws of the company provided that directors should be elected and officers should be elected for the term of one year and until their successors shall have been elected and qualified, and further, that "all directors, officers and employees in accepting position or employment shall be understood to agree that they may be dismissed in this manner (that is, by a vote of two-thirds in number of all the directors). When a director, officer or employee shall be discharged in the manner prescribed herein, he shall have . . . no claim for services after the date of his discharge."

The plaintiff was paid his salary upon a basis of $6,500 per year. until on or about 4 November, 1920. G. A. Phillips, who was the owner

of about two hundred shares of the capital stock, and who was the financial support of the company, became heavily involved as an endorser for the company. In the fall of 1920 he was bound upon approximately $135,000 of the company's liabilities. The cost of material had declined during the year 1920, and the company was facing a tremendous loss by reason of business depression. G. A. Phillips sold his interest in the corporation to the defendants, Flynn, Leach and Winslow. Phillips had advanced to the company from time to time about $69,000, and this was set up on the books of the company as a surplus, although the company owed this amount to Phillips for advances so made by him from time to time. In the sale of his stock to Winslow and others Phillips also sold his interest in this so-called surplus account. Plaintiff contended that $5,000 of this surplus account was borrowed by Phillips from the Eureka Lumber Company and loaned to the defendant corporation, and that, when Flynn, Leach and Winslow bought the stock of Phillips, they should have assumed payment of this $5,000 indebtedness; whereas, as a matter of fact, it was paid from the assets of the corporation, and the plaintiffs, therefore, contend that, as they were the owners of one-fifth of the stock, the payment of this $5,000 indebtedness to the Eureka Lumber Company constituted a diversion of the funds of the corporation, and that the plaintiff should be entitled to one-fifth of that amount, to wit, the sum of $1,000.

One of the creditors of the corporation, to wit, A. F. Pringle, Inc., brought a suit in the Federal Court in 1921 against Flynn, Leach and Winslow, F. T. Phillips, plaintiff, G. W. Wright, and G. A. Phillips. In paragraph fourteen of the complaint in said action it was alleged: "That there is grave and serious dissension among the stockholders and directors of said corporation, seriously affecting the proper carrying on of the business of the corporation and the preservation of its assets. . . . And these complainants further allege that if the assets which properly belong to the said corporation which the said Flynn, Leach and Winslow have diverted and tortiously taken for their own use and are attempting wrongfully to convert and take to their own use, are restored to the corporation and the further diversion thereof prevented, that the said corporation would be solvent . . . but that if the said Flynn, Leach and Winslow are not restrained by this honorable court and are permitted to sell said cotton and convert the other assets claimed by them as their individual property, . . . though belonging to the said corporation, and are not compelled to restore the moneys and assets of the corporation which have already wrongfully been used, that then the company will be insolvent."

In paragraph fifteen of said petition or complaint it was alleged in substance that the defendants, Flynn, Leach and Winslow, were taking

the assets of the company held by them as directors in trust for the benefit of creditors and applying the same to the liquidation of their individual liability assumed by them at the time the said stock was taken over from G. A. Phillips.

The plaintiff, Wright, and F. T. Phillips, answering the petition, admitted the allegations contained in paragraph fourteen of the petition, and further alleged "that there are grave, serious and fundamental dissensions between the stockholders of the Phillips Fertilizer Company and the defendants, G. W. Wright and F. T. Phillips, and their associates. After a hearing in Wilson before *Hon. H. G. Connor,* U. S. District Judge, the action brought by Pringle, Inc., was dismissed by a decree containing this declaration: "And it further appearing to the Court that all matters under controversy between and among the plaintiff and the defendants have been compromised and adjusted to the mutual satisfaction of all parties, it is ordered and decreed that this action be dismissed at plaintiff's cost." Thereafter, at a meeting of the stockholders of the company, it was ordered that settlement be made with Pringle, Inc., in accordance with the judgment of *H. G. Connor,* District Judge. At the same meeting it was ordered that $60,000 preferred stock be issued, of which amount $5,000 was to be issued to A. F. Pringle, Inc., and $55,000 to Flynn, Leach and Winslow. The minutes of this meeting were signed by G. W. Wright, who is plaintiff in this action. This issue of preferred stock was to cover the surplus account above referred to.

In November, 1920, after business depression had set in the company paid the plaintiff $150 a month until on or about January, 1922, when he was paid $175 per month, and was discharged in March, 1923.

The plaintiff asserts that in December, 1919, the Phillips Fertilizer Company employed him for a period of five years, commencing 1 January, 1920, at a salary of $6,500 a year, and that he was paid at this rate until November, 1920, when the payments to him were reduced to $1,800 a year, and afterwards increased to $2,100 per year, and he brings suit for the sum of $7,870.77, balance due on salary and for the further sum of $1,000, same being one-fifth of the so-called surplus account involved in the Eureka Lumber Company transaction, and for the further sum of $804.58 for interest paid on notes for stock in the corporation.

At the conclusion of plaintiff's evidence there was judgment of nonsuit, and from this judgment the plaintiff appealed.

*Wiley C. Rodman for plaintiff.*
*Small, MacLean & Rodman and Ward & Grimes for defendants.*

BROGDEN, J. Two questions of law are presented upon the record:

1. Is the plaintiff estopped from asserting his claim for salary under the facts of this case?

2. Is the judgment of the District Court *res adjudicata?*

The plaintiff alleges that in December, 1919, at a regular meeting of the directors of the corporation, he was employed for a period of five years at a salary of $5,000 a year. The minutes of the corporation, however, for that meeting declare that it was "ordered that Geo. W. Wright be paid a salary of $5,000 for the year 1919." The plaintiff, George W. Wright, who wrote the minutes of the meeting, testified: "I put down what they said; I didn't say anything to the contrary; I already had an understanding; I didn't have anything to say about it. I wrote it down as they fixed it. I was at the meeting and wrote down the minutes as passed at that meeting. There were no written records of the transaction of that meeting except the minutes. I kept the minutes."

At the meeting of the directors of the company, held on 6 January, 1920, the following entry appears: "On motion, duly seconded, it was ordered that G. W. Wright be paid a salary of $6,500 for the year 1920." In regard to this entry in the minutes, plaintiff testified: "I prepared the minutes of the meeting on 6 January, 1920, when my salary was fixed at $6,500 for the year 1920. It was done according to custom. I wrote the record of the minute book, and Fenner Phillips signed it as secretary. I drew that salary for ten months of 1920. I drew like I always did. Some of it was paid in paper. For the remaining two months they paid me $150. It was paid at a different rate after October, 1920. I drew out all that was allowed me. I took what they gave me. . . . Up to November, 1920, I think all the records in the minute book were written by me, except the signatures of Fenner T. Phillips."

From this testimony of the plaintiff it is apparent that the minutes of the corporation, prepared by the plaintiff, show that the salary of $6,500 was confined to the year 1920. He is now claiming in this action the balance of his salary at $6,500 per year subsequent to 1920. It is a well settled principle of law that a failure to enter a resolution of the stockholders of a corporation on its minute book at the time it was adopted does not affect its validity. Such corporate acts can be proved by parol testimony where they are not recorded. *Bailey v. Hassell,* 184 N. C., 458; *Everett v. Staton,* 192 N. C., 216.

However, the question presented here is not whether the proceedings of the meetings can be established by parol evidence, but whether or not the minutes as written by the plaintiff himself estop him from claiming

an amount in excess of that specified in the written record. On 6 January, 1920, when the meeting was held, the plaintiff was vice-president of the corporation and participated in that meeting and wrote the minutes thereof. "It is well understood that a stockholder in a private corporation is bound by a corporate resolution regularly passed in accordance with its charter and by-laws, and although attended with some irregularities a member who is present when a measure is formally passed and votes for the same, or fails to make protest, is ordinarily concluded." *Hoke, J.,* in *Meisenheimer v. Alexander,* 162 N. C., 227; *Winstead v. Hearne,* 173 N. C., 606.

If the plaintiff had a valid contract with the corporation for five years service, it was his duty to give notice of his contentions and not wait until the corporation passed into the hands of other parties, and after a lapse of four years to assert in court a claim for services in excess of the amount specified in the resolution by the directors in a meeting in which he participated. After November, 1920, the plaintiff was paid the sum of $150 a month. He made no protest, but accepted this small payment, and when asked about the matter, replied: "I will take what they give me, but I will contend for what they owe me." After plaintiff's salary was increased to $175 per month, and until his discharge in 1923, the record does not disclose that he made any protest or gave any notice whatever to the corporation as to his contention that he had a five-year contract for $6,500 per year.

The principle applicable to this state of facts is thus declared in *Hill v. R. R.,* 143 N. C., 557: "It is a general rule of law, as well as of good morals and fair dealing, that if a party is silent when he should speak or supine when he should act, he will not afterwards be permitted to either speak when he should be silent or to act when he has failed to do so at the first proper and opportune moment."

Applying these principles of law to the facts appearing upon the record, we hold that the plaintiff cannot now be heard to claim this excess salary.

The same principles of law control the rights of plaintiff with respect to his claim for one-fifth of the so-called surplus account. After the suit with Pringle had been settled, the plaintiff participated in a corporate meeting held on 7 January, 1922, and acted as secretary of the meeting, and, as such, recorded the minutes thereof. The minutes show that preferred stock was issued to Flynn, Leach and Winslow for $55,000 by reason of the so-called surplus account. The plaintiff made no protest until the suit was brought in January, 1925, and he cannot now be heard to attack this transaction. *Winstead v. Hearne, supra; Meisenheimer v. Alexander, supra.*

It is not necessary to decide whether or not the decree of the Federal Court operated as an estoppel by judgment. The pleadings apparently are broad enough to have such effect, but, as we hold that the plaintiff is estopped upon the facts and principles of law heretofore declared, it would be useless to discuss the effect of the decree of *Judge Connor*.

The judgment as rendered is

Affirmed.