CHARLES HAMMER, Appellant, v. CHRISTIAN H. WERNER and Others, Respondents, Impleaded with ANCHOR CAP CORPORATION, Defendant.

Second Department, June 16, 1933.

*David M. Neuberger* [*Murray Ratner* with him on the brief], for the appellant.

*Donald Havens* [*Francis Goertner* with him on the brief], for the respondents.

CARSWELL, J. Plaintiff seeks damages of $286,177, as a former stockholder in the American Metal Cap Company. His complaint is attacked as one that seeks redress for wrongs that may be redressed only in a derivative action. Plaintiff disavows pleading a derivative action. We may disregard, as surplusage, allegations that assert a wrong to the corporation and, indirectly, a wrong to the stockholder, on the theory that they may be righted only in a derivative action. The question is, therefore, do the allegations disclose a wrong to the stockholder as such, apart from the corporation?

The complaint, liberally interpreted and summarized, alleges that on the occasion specified the directors, Werner and Smith,

acquired a block of stock of the American Metal Cap Company which had previously been bought by it and carried in its treasury; that the acquisition was under circumstances (1) that constitute a breach of the fiduciary relationship owing by them to the stockholders, (2) that the purchase was for an inadequate price, (3) that the purchase, apart from the price paid, inequitably increased their proportionate vote in the affairs of the corporation and in the election of directors; that these consequences arose because defendants Werner and Smith took over this block of stock without affording the plaintiff an opportunity to participate ratably in the purchase thereof.

In addition to necessary formal allegations and numerous allegations appropriate only to a derivative action, the twelve-page complaint discloses that between April, 1924, and November, 1927, plaintiff owned 636 shares of stock of American Metal Cap Company, of which defendants Werner and Smith were officers and directors; that the American Metal Cap Company, between those dates, bought from various stockholders other than plaintiff and defendants, 2,130 shares of its outstanding stock, which were " turned into the treasury." Of this block, 445 shares were offered to stockholders in ratable proportions and sold; the remaining 1,685 shares continued in " the treasury of the Company." Plaintiff owned 636 shares of a total amount outstanding of 2,477. On a ratable basis he would have been entitled to subscribe for 433 shares of the 1,685 shares if they were reissued. Defendants Werner and Smith turned over these 1,685 shares of " treasury stock " to themselves (in their own names or that of nominees) on a fraudulent basis, both with respect to price paid and the effect of diminishing of plaintiff's proportionate voting rights in the corporation, in relation to participation in the surplus and voice in the election of directors. Plaintiff says these individual defendants carried out their plan, unknown to him, between December, 1926, and May, 1927, by appropriating $213,000 in excess of their proper salaries from the corporation and returning $118,000 thereof in purported payment for these 1,685 shares of treasury stock. He alleges:

" *Seventeenth.* That in December, 1926, May, 1927, and February, 1928, when the defendants Werner and Smith, as aforesaid, issued to themselves the treasury stock of the American Metal Cap Company in the manner herein described, the said American Metal Cap Company *was not in need of additional money for any of its purposes nor did the aforesaid transactions supply any additional money or capital to the corporation; that the said company had a large surplus and the purported ' sales ' of the treasury stock were*

*made to the defendants Werner and Smith individually* and/or their nominees solely in furtherance of the aforesaid wrongful, unlawful and fraudulent plan and scheme by the said defendants Werner and Smith to increase their stockholdings and thereby *deprive and defraud plaintiff of his rights as a stockholder of the American Metal Cap Company, to diminish the value of his stockholdings and to decrease the amount of his voting rights as such stockholder."*

On January 31, 1929, with knowledge of the alleged improper acts of the individual defendants, the Anchor Cap Corporation bought the entire stock of the American Metal Cap Company for $2,753,000. This included the 1,685 shares taken by Werner and Smith and the plaintiff's stock. It bought with knowledge of the wrongful acts, which fact disabled that corporation from claiming any grievance of a derivative character as sole stockholder of the American Metal Cap Company.

That " as a result of the * * * fraudulent transactions relating to the disposition of the treasury stock of the American Metal Cap Company the *pro rata* share of the $2,753,000 which plaintiff's 636 shares * * * entitled him to was reduced by $286,177," and the *pro rata* shares of the defendants Werner and Smith increased by that sum, which amount they have refused to pay to the plaintiff and for which judgment is demanded.

The first question is whether or not plaintiff as a stockholder had a naked pre-emptive right to participate ratably in the issuance of these 1,685 shares of treasury stock, apart from any element of fraud constituting a wrong to him personally and independent of any wrong to the corporation.

When treasury stock is referred to, it is stock which issued as part of an original authorized issue and which has been repurchased by the corporation — not retired, but retained in its treasury. In other words, it is not authorized stock which has never been issued. These two classes of stock have many points of similarity, but their points of difference give rise to different legal implications. In so far as relates to qualities common to both, it may well be that the same principles should apply to both. There is some obscurity in the cases as to when a pre-emptive right is or is not possessed by a stockholder in respect of stock issued by his corporation.

The general rule is that a stockholder has a pre-emptive right to purchase the stock of his corporation only when there is an increase of capitalization and a new issue floated. (*Stokes* v. *Continental Trust Co.*, 186 N. Y. 285.) But the assertion that no pre-emptive right may vest in a stockholder in respect of unissued authorized stock has been disavowed as being too broad.

It has been indicated that ordinarily there is no such right, but that circumstances may exist or arise under which a pre-emptive right may emerge with respect to unissued authorized stock, the proceeds of which are to be devoted to certain specified purposes. (*Dunlay* v. *Avenue M Garage & R. Co.*, 253 N. Y. 274) That case not only foreshadows such a holding but indicates also that directors may not acquire stock of a corporation unless it be first offered at a fixed price to stockholders or a waiver of their rights obtained; that buying without so doing would be a breach of their fiduciary obligations. That case primarily concerned unissued authorized stock. It recognized that the fiduciary relationship of the directors in respect of their conduct concerning a particular block of stock may generate what in effect is a pre-emptive right, a failure to afford which would constitute conduct inequitable in the highest degree on the part of the directors — a breach of duty. Such a breach would be a wrong personal to the stockholders in so far as it affects their proportionate voice in the control of the affairs of the corporation and the election of directors and their proportionate participation in the surplus of the corporation.

It is true that that case does not concern itself with treasury stock. But it declares a principle applicable alike to all forms of stock, to wit, that directors shall not breach the obligations which they owe as trustees for all the stockholders in connection with stock, the issue of which is within their control, (a) by increasing their voice in the control of the corporation through the secret purchase of such stock, or (b) increasing their proportionate share in the surplus in that manner, or (c) obtaining the stock at an inadequate price; the latter form of misconduct, however, being one with which we may not now concern ourselves, as it may be redressed only in a derivative form of action. The duty that may be thus violated should not be confined to any particular kind of subsequently issued or reissued stock. It is applicable to all acts of directors with respect to stock or other property of the corporation. Where that obligation has been violated, the special circumstances or acts constituting the breach of duty may generate a pre-emptive right which would not otherwise exist, although the wrong may be redressed as a breach of duty independent of the existence of a pre-emptive right. Then again, the directors, in acquiring this block of stock, may have breached, in another aspect, the fiduciary duty they owed to all of the stockholders. It may be that the evidence may disclose that in fact or substance this block of stock was retired. In such a situation, a right to participate ratably in its reissuance might arise equitably in the

plaintiff in the event that the directors decided, in effect, to resurrect that which in fact had been retired.

Whenever a pre-emptive right to participate in a reissue of treasury stock has been denied, it has always been under circumstances that involved no breach of fiduciary obligation by directors. That is, the stock which the corporation repurchased and carried in its treasury had not in fact been retired and then resurrected, or had not been purchased by the directors themselves, or had been sold at auction or at a price that did not diminish the proportionate interest of the existing stockholders in the surplus of the corporation. (*Borg* v. *International Silver Co.*, 11 F. [2d] 147, 151, and cases cited therein.) And, even then, the distinction which denies a pre-emptive right in respect to treasury stock and grants it as to a new issue, is declared to be *tenuous*.

When a corporation buys its own stock to retire it or hold it indefinitely, such stock *may* cease to be true treasury stock within the rule permitting reissue without affording stockholders a right to participate ratably. (*Dunn* v. *Acme A. & G. Co.*, 168 Wis. 128; 169 N. W. 297; 43 Harvard Law Review, 603, footnote.)

The dearth of cases directly in point in respect to treasury stock may be due to the subject being covered by special provisions in corporate charters or because of a practice of directors to accord to stockholders a right to participate ratably, as is claimed to have been done in this very corporation on a different block of 445 shares of treasury stock. Such a course is manifestly an equitable one.

The absence of the proofs of the allegations of the complaint precludes a statement with finality of whether or not a pre-emptive right arose in the plaintiff, or the equivalent thereof, as a consequence of a breach of a fiduciary obligation by the individual defendant directors. Likewise, it may not be declared with finality that under no circumstances may there be a pre-emptive right in respect of treasury stock. The principle which may shape decision has been discussed by Victor Morawetz in " Pre-emptive Right of Shareholders " (42 Harvard Law Review, p. 197): " If shares previously issued by the corporation are acquired by it and are held by it as treasury shares to be sold for the benefit of the corporation, these shares are not subject to a pre-emptive right of the existing shareholders. *However, in disposing of treasury shares, the directors must observe the principles stated in sections one and two, and circumstances may exist rendering it prejudicial to the existing shareholders and a breach of duty on the part of directors to sell treasury shares without first offering them to the shareholders.*"

The earlier observation referred to (p. 188) is, in part: " It

should be observed, also, that although shareholders ordinarily have no pre-emptive right in case of an issue of additional shares * * * in case of a sale of treasury shares, yet under special circumstances it may be prejudicial to the shareholders and a breach of the duty of the directors, as fiduciary agents, to issue or to sell such shares without first offering them to the shareholders. *It is obviously impracticable to state all the combinations of facts and circumstances which may render an issue of additional shares a breach of duty of directors as fiduciary agents or a fraud upon shareholders.*" To the same effect is Fletcher on Corporations (1932 ed.) (Vol. II, § 5160, p. 317; § 5135, p. 222); Yale Law Journal (Vol. 38, p. 563, " Shareholders' Pre-emptive Rights," by A. H. Frey); " Pre-emptive Right " (Harvard Law Review, vol. 43, p. 586, by H. S. Drinker, Jr., subtitle " Treasury Shares," p. 603, and footnote, p. 603).

The precise limits of the applicable doctrine may not be stated definitely in advance of the proof, for the reason stated in the last sentence quoted from Morawetz.

It is not intended to indicate that every reissue of treasury stock may properly be subjected to a claim of pre-emptive right. Where there is no inequitable conduct or where the stock has not in substance been retired, a pre-emptive right may not arise. For instance, directors not otherwise prohibited by law may have their corporation repurchase its own stock to prevent a destruction of values due to abnormal conditions or to prevent outsiders from getting a share and voice in the corporation on an inequitable basis because of inadequate market price prevailing. Pursuing such a course would increase proportionately the surplus back of the non-selling stockholders' shares where such stock was carried in the treasury. Again, where it was resold, the same advantage to existing stockholders would ensue if the resale were at a fair price or one higher than the repurchase price.

The fact that a particular act of directors may constitute a wrong to the corporation which may be righted ordinarily on behalf of the corporation does not bar a stockholder from having redress if that act effects a separate and distinct wrong to him independently of the wrong to the corporation. Redress of this latter wrong is available to him personally despite the right of a present stockholder to redress the wrong in a derivative action so far as it relates to the corporation. (*Von Au* v. *Magenheimer*, 126 App. Div. 257; affd., 196 N. Y. 510; *Ritchie* v. *McMullen*, 79 Fed. 522; *Rothmiller* v. *Stein*, 143 N. Y. 581.)

The defendants say that under *Pollitz* v. *Gould* (202 N. Y. 11) the plaintiff may not maintain this action. That case holds that

a present stockholder may bring a derivative action to set aside a fraudulent transaction consummated at the expense of the corporation before he, the stockholder, acquired his stock. That is the converse of the situation herein in some respects, but it concerns acts which merely give rise to a derivative action. It leaves untouched rights which are personal to the stockholder as a consequence of injuries to his property rights, suffered by him personally at the time he was a stockholder and of which injuries he learns after he has ceased to be a stockholder. Such a chose in action vests in a stockholder apart and distinct from any rights of a derivative character which pass when he conveys the stock. The only chose in action which inheres in the stock and passes when it is conveyed is one that is enforcible exclusively in a derivative action. Plaintiff, therefore, may maintain this action to redress a wrong to him personally, of the character hereinbefore indicated, while he was a stockholder, although he is not now a stockholder. It is particularly important that such a right may be vindicated, if the wrong was done where no present stockholder exists who can right it, because of the allegation that the present sole stockholder took with knowledge of the wrongful acts of the directors, which wrongful acts for the most part, if not entirely, did not do any damage to the corporation but may be found to have damaged those who were stockholders when the acts of which complaint is made occurred.

Accordingly, the complaint must be held sufficient in law.

The order granting the motion to dismiss the complaint and the judgment entered thereon should be reversed on the law, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs. The appeal from the order denying the motion to resettle said order should be dismissed.

LAZANSKY, P. J., KAPPER, SCUDDER and TOMPKINS, JJ., concur.

Order granting motion to dismiss the complaint and judgment entered thereon reversed on the law, with ten dollars costs and disbursements, and motion denied, with ten dollars costs. Appeal from order denying motion to resettle said order dismissed.