W. E. Hedger Transportation Corp. et al., Plaintiffs, *v.* Ira S. Bushey & Sons, Inc., et al., Defendants.

Supreme Court, Special Term, Kings County, June 5, 1945.

*James A. Martin* and *Christopher E. Heckman* for defendants.

*Henry Vollmer, Jr.,* and *Horace M. Gray* for plaintiffs.

SMITH, J. Pursuant to rule 106 of the Rules of Civil Practice, the following three motions are made, before joinder of issue, to dismiss the complaint for failure to state a cause of action: (1) A motion on behalf of all the individual and corporate defendants to dismiss, as against them, the complaint by the individual plaintiff; (2) a motion on behalf of the individual defendants to dismiss, as against them, the complaint of both the individual and the corporate plaintiff, and (3) a motion on behalf of the corporate defendant, Tug Claremont Corporation, to dismiss, as against it, the complaint of both the individual and the corporate plaintiff.

The complaint purports to set forth one cause of action on behalf of the corporate and the individual plaintiffs against all the defendants for an accounting, reformation or cancellation of certain instruments and damages of $600,000. The allegations are divided into thirty-four numbered paragraphs. Unfortunately, their lack of clarity, coherence and unity make it difficult to ascertain either the legal theory of the cause or causes of action pleaded or their number. The solution of this difficulty and of these motions may be aided by a summary, in narrative form, of the material allegations of the complaint.

The individual plaintiff, W. E. Hedger, had acquired considerable skill and experience and valuable good will in the water transportation business in the New York area. The corporate defendant, Ira S. Bushey & Sons, Inc., is engaged in the business of repairing boats, tugs and barges, and also is the owner of some. The other two corporate defendants, New York Scow Corporation and Tug Claremont Corporation, own and operate certain boats, tugs and barges. The individual defendants, Francis S. Bushey and Raymond J. Bushey, either as officers, directors or stockholders, control and dominate the three corporate defendants. The latter either own or control fifty-seven boats, tugs and barges (listed on schedules A and B attached to the complaint) which are divided into four classes or groups, called the Foster Fleet, the Ryan Fleet, the B&B Fleet and the

Hedger Boats. The three fleets mentioned consisted of twenty-six boats; the Hedger Boats totaled thirty-one.

On July 30, 1932, Mr. Hedger and Messrs. Francis S. Bushey and Raymond J. Bushey orally entered into a joint venture in the transportation business. They agreed: (1) That a new corporation would be organized to operate the business; (2) that Mr. Hedger would contribute his labors, skill and good will; (3) that the new corporation would hire from the Busheys the fleet boats and would operate and maintain the Hedger Boats; (4) that all the work of repair and maintenance of the Hedger Boats, whenever practicable, would be done by the Bushey Corporation at a fair and reasonable price; (5) that out of the earnings of the new corporation an indebtedness of $155,000, plus accrued expenses, owed to the Commercial Investment Trust, Inc., and secured by a mortgage on the Hedger Boats, would be paid; (6) that all the stock of the new corporation was to be issued to and owned by Mr. Hedger but was to be held by the Busheys in escrow; (7) that upon the payment of said indebtedness to the Commercial Investment Trust, Inc., the Busheys would cause said stock to be transferred to Mr. Hedger or his nominee and would cause the title to said Hedger Boats to be transferred to Mr. Hedger or his nominee; (8) that Mr. Hedger was to be the president of the new corporation and was to have the privilege of borrowing therefrom $15,000 per annum, and (9) that an employee of the Busheys would be the secretary and treasurer of the new corporation.

Thereupon the plaintiff corporation was immediately organized and proceeded to engage in the transportation business. All the other steps contemplated by the joint-venture agreement were also carried into effect by the parties. Mr. Hedger became the president; and one, Fred J. Provo, an employee and nominee of the Busheys, was made the secretary and treasurer, and he continued in that capacity until the latter part of 1944. The mortgage indebtedness to the Commercial Investment Trust, Inc., was paid; the title to the Hedger Boats was transferred to the plaintiff corporation as the nominee of Mr. Hedger, and all the outstanding stock of the plaintiff corporation was delivered to Mr. Hedger.

Mr. Hedger and the plaintiff corporation now allege that the defendants, in some instances with and in some without the aid of the Bushey's employee, Mr. Provo (who handled the books and records and funds of the plaintiff corporation), in the following transactions either wasted, converted or otherwise misappropriated the assets of the plaintiff corporation or obtained,

by misrepresentation and breach of contract, more than the sums justly due them: (1) Between July 30, 1932, and December 23, 1938, the debt to the Commercial Investment Trust, Inc., was liquidated by payments in excess of the total amount due.

(2) On or prior to December 23, 1938, the individual defendants, Bushey, represented to Mr. Hedger: (a) That $400,000 was then due on open account from the plaintiff corporation to the Bushey Corporation and the Scow Corporation for hire of the fleet boats and for the repair and maintenance of the Hedger Boats; and (b) that $200,000 was the reasonable value of certain boats proposed to be sold to plaintiff corporation; that such representations were false and untrue in that the charges for boat hire and repairs were exorbitant and excessive and the total amount actually due therefor was considerably less than $400,000, and in that the reasonable value of the boats sold was considerably less than $200,000; that in reliance on such false representations the plaintiff corporation executed and delivered to defendants a series of notes aggregating $600,000 and the following mortgages as collateral security for said notes: (a) Three mortgages on certain boats, to the defendants; (b) a chattel mortgage on five tugboats, to the defendant Scow Corporation; (c) a mortgage on four other tugboats to the same defendant, and (d) a preferred mortgage on certain barges, to the defendants.

(3) That on October 4, 1940, the individual defendants, Bushey, represented there was then due upon said series of notes from plaintiffs to the defendants, the Bushey Corporation and the Scow Corporation, the sum of $535,000; that such representation was false and untrue; that plaintiffs were not then indebted to defendants in said amount or in any amount, and that in reliance on such false representation plaintiffs conveyed to the Bushey Corporation two certain tugs in partial payment to the extent of $10,000 each on said notes.

(4) On or about July 22, 1942, the individual defendants Bushey represented that the plaintiff corporation was justly indebted to the Bushey Corporation in the sum of $97,507.56; that such representation was false and untrue in that the plaintiff corporation was not indebted to the Bushey Corporation in so large an amount, if in any amount, and that in reliance on such false representation the plaintiff corporation executed and delivered to the Bushey Corporation a series of twenty-six promissory notes aggregating said amount, and as further collateral security for said notes executed and delivered to the Bushey Corporation a preferred mortgage on certain barges

and executed and delivered to the defendants a mortgage and a chattel mortgage covering certain tugboats of the plaintiff corporation.

(5) Between July 30, 1932, and November 4, 1944, plaintiff corporation, upon the certification of said Fred J. Provo, its treasurer, who was in fact an employee of the defendants, paid to said defendants in excess of one million dollars; but the records of the plaintiff corporation support and justify the payment of only $300,000.

It will be observed that the five claims or grievances above set forth all relate to the business and affairs of the plaintiff corporation from the date of its organization to the date Fred J. Provo severed his connection with it. These grievances have no connection with the joint venture. That venture was merely the genesis of the plaintiff corporation and of all its subsequent transactions but it had been fully consummated and terminated. Whatever losses may have been sustained by reason of the alleged grievances were sustained by the plaintiff corporation; it was the corporation's money and property which were used. Whatever wrongs were committed were committed against it. While Mr. Hedger is the sole stockholder, if there had been other stockholders, then all of them (including Mr. Hedger) would have suffered a common loss through the wrongful depletion of the plaintiff corporation's assets. The point is that Mr. Hedger suffered no loss independent of his loss as a stockholder; he suffered no breach of any independent contractual or other individual right.

Under such circumstances the authorities are in accord in holding that a stockholder in his individual capacity may not maintain an action against a wrongdoer and that the cause of action belongs to the corporation and must be prosecuted either by it or, in case of its refusal, by the stockholders in its behalf (*Hammer* v. *Werner*, 239 App. Div. 38 [2d Dept.]; *Kono* v. *Roeth*, 237 App. Div. 252, 254–255; *Milliken* v. *McGarrah*, 159 App. Div. 725, 727; *Von Au* v. *Magenheimer*, 126 App. Div. 257, affd. 196 N. Y. 510; *Coronado Development Corp.* v. *Milliken*, 175 Misc. 1, 4–5, appeal dismissed, 262 App. Div. 1019; *Green* v. *Victor Talking Mach. Co.*, 24 F. 2d, 378, certiorari denied, 278 U. S. 602; *Hidalgo* v. *McCauley*, 50 Ariz. 178; *Miller* v. *Preston*, 174 Md. 302; *Shenberg* v. *DeGarmo*, 61 Col. App. 2d 326).

Plaintiffs take the position, however, that by this action they are seeking to enforce the contractual rights flowing from the contract of joint venture, made prior to the organization of the plaintiff corporation, between Mr. Hedger and the two individ-

ual Bushey defendants; and that the corporate entities of the plaintiff corporation and the defendant corporations may be ignored because they were simply the instrumentalities employed by the individuals to effectuate the joint venture. This position is unsound.

In the first place, as already stated, the joint venture had been consummated and terminated and the grievances alleged arose in the transaction of the business of the plaintiff corporation. In the second place, as a matter of law, upon the facts alleged the corporate entity of none of the corporations may be disregarded. Plaintiffs do not plead or assert that such entities were created or used as a subterfuge in order to mislead or defraud them. In fact, the contrary appears; and plaintiffs in their briefs expressly disclaim any charge of fraud. It has become well settled that the open and deliberate use by individuals of the corporate medium for the transaction of business will subject to liability only the corporation and will give rise to rights which may be enforced only by the corporation; and that this legal result ensues even when the corporation is dominated by one individual who holds all of its stock (*Niles* v. *N. Y. C. & H. R. R. R. Co.*, 176 N. Y. 119, 122–125; *Brock* v. *Poor*, 216 N. Y. 387, 400–405; *Elenkrieg* v. *Siebrecht*, 238 N. Y. 254, 261–263). At times, perhaps, the " corporate veil " may be pierced and the corporate entity disregarded, but only when they have been used as a cloak and a cover and as a means for the commission of a palpable fraud (*Quaid* v. *Ratkowsky*, 183 App. Div. 428, affd. 224 N. Y. 624; *Boatright* v. *Steinite Radio Corp.*, 46 F. 2d, 385, 388; *Continental Securities Co.* v. *Rawson*, 208 Cal. 228). But, as stated, no such use has been asserted and plaintiffs in their briefs disavow any claim of fraud. Indeed, in view of the allegations of the complaint no such use could be established.

In support of their position and their complaint plaintiffs rely principally on the case of *Meyerson* v. *Franklin Knitting Mills* (185 App. Div. 458). That case is consistent with the rules of law just stated; it does not support plaintiffs. There, the plaintiff purchased all the stock of a corporation from defendant in reliance on defendant's promise that it would extend credit to the corporation and sell it merchandise at stated prices. Defendant breached its promise. It was held that this breach gave plaintiff an individual right to recover damages from defendant. While the plaintiff was a stockholder of the corporation which defendant harmed by its breach, the plaintiff sued to enforce, not the rights of that wronged corporation or

his rights therein as a stockholder, but his own independent right under a separate contract made between him and the defendant which induced him to buy the corporation's stock. The breach of that contract, it was properly held, gave rise to two separate causes of action, one in favor of plaintiff personally and one in favor of the corporation (cf. *Hammer* v. *Werner*, 239 App. Div. 38, 44). While it was subsequently also held that, in order to avoid a double recovery, the corporation could not maintain its action (*Smart Set S. C. Co., Inc.,* v. *Franklin Knitting Mills,* 191 App. Div. 33, 37), this latter holding appears to be erroneous. It is erroneous because in the computation of the damages suffered by the plaintiff personally the probable recovery by the corporation would have to be taken into consideration and would necessarily reduce his loss, thus obviating any double recovery (cf. *General Rubber Co.* v. *Benedict,* 215 N. Y. 18, 23–26).

The motion on behalf of all the defendants to dismiss, as against them, the complaint by the individual plaintiff, is granted, without costs.

The other two motions to dismiss the complaint as against the individual defendants and as against the corporate defendant, Tug Claremont Corporation, must be denied. In one or more of the causes of action pleaded they appear to be connected, either as active or passive participants or as conspirators with Mr. Provo, in the breach of contract or duty alleged. Such connection is sufficient to justify their retention as proper, if not necessary, parties.

By this decision the court does not intend to express any opinion as to the sufficiency of *each* of the causes, pleaded in this complaint or to be pleaded in an amended complaint, by the corporate plaintiff against any of the defendants. The court decides only that the present complaint, taken as a whole, is sufficient to state *a* cause of action by the corporate plaintiff, but not by the individual plaintiff, against the moving defendants.

But the corporate plaintiff may well give consideration to the service of an amended complaint separately stating and numbering, pursuant to the requirements of rule 90 of the Rules of Civil Practice, the causes of action attempted to be alleged in the present complaint. This will help to clarify the issues for the benefit of all concerned, including the court. If an amended complaint be served the wrongdoing charged against *each of the defendants named,* can and should be made more definite and certain.