CARROLL, DONALD K., Acting Chief Judge
(dissenting).
The plaintiff in an action for declaratory relief has appealed from a final summa *675 ry judgment entered by the Circuit Court for Volusia County declaring the pre-emp-tive rights of various classes of its stockholders.
This action was occasioned by the plaintiff’s public offering and sale on May 22, 1968, of 60,000 shares of its common stock and 7% convertible debentures in the total principal amount of $1,200,000. Through oversight these securities were issued and sold without affording the existing stockholders the opportunity to exercise their pre-emptive rights to purchase their pro rate shares of such securities in accordance with Section 608.42(2), Florida Statutes, F.S.A. There are no allegations of fraud.
That statute reads as follows:
“Unless otherwise provided by the certificate of incorporation, every stockholder, upon the sale for cash of any new stock of the same kind, class or series as that which he already holds, shall have the right to purchase his pro rata share thereof (as nearly as may be done without issuance of fractional shares) at the price at which it is offered to others, which price, in the case of par value shares, may be in excess of par.” (Emphasis supplied.)
When this error was later discovered,' the plaintiff brought this action in order to obtain a declaration and adjudication of its liabilities to the affected stockholders.
After the defendants answered the plaintiff’s complaint, the plaintiff moved for a summary judgment. This motion was heard by the Circuit Court on a record consisting of the pleadings, the plaintiff’s answers to certain interrogatories, and the plaintiff’s affidavits. No counter-affida--vits were filed by the defendants.
After the hearing the Circuit Court entered the summary judgment appealed from herein, in which the court carefully considers and adjudges the rights of the various classes of shareholders and awards damages in excess of $41,000 against the plaintiff and in favor of certain stockholders.
In this appeal the plaintiff complains of two adjudications contained in the said summary judgment.
First, the plaintiff complains in this appeal that the court erred in ruling that shareholders had pre-emptive rights with respect to 10,315 shares of treasury stock which were included in the securities sold on May 22, 1968.
Secondly, the plaintiff contends that the court erred in the awarding of damages, because the defendant shareholders in fact benefited from the sales of securities on May 22, 1968, so the court should have awarded only nominal damages for the technical violation of their pre-emptive rights. Furthermore, the plaintiff contends that, even if actual damages were properly allowable, the court incorrectly ruled that: “The measure of damages should be the difference between the amount realized by the corporation on the sale of the securities and the market value of the securities on the date of such sale.”
I think that the first above contention made by the plaintiff is sound under the decisional 'law, for the pre-emptive rights of shareholders have not generally extended to treasury shares. Borg v. International Silver Co., 11 F.2d 147 (2d Cir.), aff’d, 11 F.2d 143 (S.D.N.Y.1925); Hammer v. Werner, 239 App.Div. 38, 265 N.Y.S. 172 (2d Dept. 1933); Runswick v. Floor, 116 Utah 91, 208 P.2d 948 (1949); Dunn v. Acme Auto and Garage Co., 168 Wis. 128, 169 N.W. 297 (1918).
The writer of the annotation in 52 A.L.R. 220 states at page 236 the general rule to be as follows:
“The rule which entitles the existing stockholder to a preference over strangers to subscribe to an increase in capital stock does not, in general, apply to the purchase of stock which has been issued *676 and later transferred back to the corporation as part of its assets. . . . ”
As to the plaintiff’s first contention, decision writers have not often had the opportunity to -rule as we have herein, in fact, this question is one of first impressions in Florida. However, from the earliest decision on the subject, Hartridge & Co. v. Rockwell & C., 1 R.M. Chartl’. 260 (Ga., 1828), it has been held that where a new issue had been authorized, “ . [EJach Stockholder had a right to a preference in the purchase to the extent of stock previously held by him.” However: “In purchasing and selling a part of the stock, (by the Corporation) they (the directors) neither extend nor controul those limits because the capital remains the same, neither diminished, nor increased.”, and a stockholder’s pre-emptive right “would not apply to any part of the old stock.”
In Reese v. The Bank of Montgomery County, 31 Pa. 78 (1855), the court held that a stockholder has no greater right than a stranger to subscribe to original stock untaken. See also: Curry v. Scott, 54 Pa. 270 (1867); State ex rel. Page v. Smith et al., 48 Vt. 266 (1876). The rule was then announced with more clarity in Crosby v. Stratton, 17 Colo.App. 212, 68 P. 130 (1902), wherein the court stated that treasury stock, when sold, need not be offered proportionately to the stockholders.
Historically, the rule then became the federal rule in the landmark decision of Borg v. International Silver Co., 11 F.2d 143 (S.D.N.Y.1926), aff’d, 11 F.2d 147 (2d Cir. 1925), wherein the court held:
“ . . . the stockholders have no right to insist that it (treasury stock) be offered to them before being sold to the public. The rule that stockholders have the first right to subscribe to stock when issued applies only to new stock. Wall v. Utah Copper Co., 70 N.J.Eq. 17, 62 A. 533; Stokes v. Continental Trust Co., 186 N.Y. 285, 78 N.E. 1090, 12 L.R.A.(N.S.) 969, 9 Ann.Cas. 738.”
The most recent statement on this question can be found in Runswick v. Floor, 208 P.2d 948 (Utah 1949), wherein the court stated:
“The principal issue to be decided by this court is as to the validity or invalidity of the sale of treasury shares to defendant Floor. In proceeding to determine this question, it should initially be pointed out that the shares involved had been once fully paid for and had been returned to the treasury of the company. Officers of a corporation may reissue this type of stock for value and in good faith without first offering it pro-rata to existing shareholders.” (Emphasis supplied.)
The rule, however, is not applied carte blanche, for in Hammer v. Werner, 239 App.Div. 38, 265 N.Y.S. 172 (2d Dept. 1933), the court stated that:
“Whenever a pre-emptive right to participate in a reissue of treasury stock has been denied, it has always been under circumstances that involved no breach of fiduciary obligation by directors.”
In Hammer, two directors of the corporation purchased a block of treasury stock from the corporation under circumstances (1) that constituted a breach of the fiduciary relationship owing by them to the stockholders, (2) that the purchase was for an inadequate price, (3) that the purchase, apart from the price paid, inequitably increased their proportionate vote in the affairs of the corporation and in the election of directors. See also: Milwaukee Sanitarium v. Swift, 238 Wis. 628, 300 N.W. 760 (1941); Andersen v. Albert & J. M. Anderson Mfg. Co., 90 N.E.2d 541 (Mass.1950).
It is, therefore, recognized that the fiduciary relationship of the directors in respect of their conduct concerning a partic *677 ular block of stock may generate what in effect is a pre-emptive right, a failure to afford which would constitute conduct inequitable in the highest degree on the part of the directors, a breach of duty; and such breach would be a personal wrong to the stockholders in so far as it affects their proportionate voice in the conduct of the affairs of the corporation.
Thus, creation of pre-emptive rights in treasury stock is a protective device afforded to the stockholders upon a showing of fraudulent conduct by the directors.
Since, in this case, no fraudulent conduct was alleged, nor was evidence elicited to show any such conduct, the trial court, in my opinion, clearly erred in granting preemptive rights to the treasury stock in issue, if in fact those shares were treasury stock. Placing treasury stock on the market, comingled with new issue stock does not destroy their character as treasury stock unless they were in fact canceled and reissued.
As to the plaintiff’s second contention concerning the measure of damages: The type of underwriting which the facts in this case indicate took place here is called a “firm commitment” underwriting wherein the issuer sells the entire issue to the underwriter who then resells the securities. Technically, this is not underwriting in the insurance sense, but a purchase-and-sale agreement; it is the most prevalent type of underwriting in the United States. The underwriting fee is usually the difference between what the underwriter pays the issuer for the securities and what the underwriter realizes from the resale of the securities (known as the “underwriting spread”). Henn, “Law of -Corporations”, Section 292, page 577.
Therefore, the provisions of Section 608.42(2), Florida Statutes, F.S.A., giving existing stockholders purchase rights upon the sale of new stock for cash are inapplicable to the purchase-and-sale agreement with the underwriters in that the amount realized by the underwriters, the “underwriting spread”, may properly be considered consideration for specified services performed by the underwriters. For an analogous type of argument see Curtis v. Briscoe, 129 So.2d 450 (Fla.App.1961). Therefore a sales commission should not properly be taken into consideration as a measure of damages.
The appellees contend that the damages were simply the opportunity to purchase at the market price offered by the broker less the broker’s commission. This argument is untenable in that the corporation would not generally offer the stock to stockholders at a discount, i. e. less than the market price. Therefore, it would seem that the discount offered to the broker would be for the service of reselling those issued stocks at the market value.
Therefore, I think that the summary judgment appealed from herein should be affirmed in part and reversed in part, and that this cause should be remanded with directions for further proceedings consistent with the views hereinabove expressed in this dissenting opinion.