MARGARET A. SCHWARTZ, as Executrix of GIRARD A. DIETRICH, Deceased, Appellant, *v.* ROBERT J. MARIEN et al., Respondents, et al., Defendants.

Fourth Department, January 17, 1974.

*Offermann, Fallon, Mahoney & Adner (Francis J. Offermann, Jr.,* of counsel), for appellant.

*Lipsitz, Green, Fahringer, Roll, Schuller & James (Evan E. James, Carmin R. Putrino* and *Lawrence A. Schulz* of counsel), for respondents.

*Per Curiam.* Absent specific provision in the certificate of incorporation, shares of treasury stock are not subject to pre-emptive rights of purchase (Business Corporation Law, § 622, subd. [e], par. [4]). Nevertheless the directors of the corporation owe a fiduciary duty both to the corporation and to its shareholders, and the sale of treasury stock to employees and

directors and the refusal to sell similar shares to appellant must accord with the established legal standards of honesty and fair dealing in the management of the corporation. If the purpose of the board of directors was to diminish plaintiff's proportionate ownership without benefiting the corporation, then appellant is entitled to relief (*Hammer* v. *Werner*, 239 App. Div. 38).

It appears from the moving papers that appellant is not and never has been active in the corporation. She acquired by inheritance the 50 shares representing her ownership. They represent 33⅓% of the authorized stock and 50% of the issued stock. She admits that she has been negotiating with the corporation for its purchase of her holdings and she concedes for purposes of this motion that the price paid by the employees and directors was a fair one.

The respondents justify their conduct by affidavits alleging that the sales were necessary to insure the continued employment of key employees and that the corporate policy was to limit further sales of stock to other than active employees of the corporation. Respondents allege that the best interests of the corporation dictated their refusal to sell appellant treasury shares to restore her 50% stock position at a time when the corporation was trying to purchase her present holdings.

Obviously the parties are engaged in a contest in which the prize is the change in the price of appellant's shares which may result by reason of her improved or weakened bargaining position depending upon her relative strength as a stockholder of the corporation.

That is the practical consideration behind this action, but be that as it may, if the directors acted properly in the discharge of their fiduciary duties by issuing the treasury stock, their actions are unassailable. Evaluation of their conduct requires development of the facts upon a trial.

The order denying summary judgment should be affirmed.

MOULE, J. (dissenting). We have for consideration what remedy, if any, is available to plaintiff, a shareholder of a corporation, when three directors have voted to sell shares of treasury stock to themselves and to two employees in order to divest her of a 50% interest in the corporation's outstanding stock and then, at a subsequent shareholders' meeting, voted their newly-acquired shares to remove her from the board.

Plaintiff, as executrix under her father's will, is the owner of 50 shares of stock in Superior Engraving Co., Inc. (Superior)

which has been in the engraving business in Buffalo for more than 40 years. Her father, Girard A. Dietrich, was one of the company's founders and until July 25, 1968 plaintiff was a member of its board of directors. Defendants Robert H. Marien, Edward G. Marien and August L. Marien are currently members of Superior's board of directors. They are brothers and on May 6, 1968 each owned eight shares of Superior' stock as beneficiaries under the will of their father, August L. Marien, Sr. The elder Marien, along with Dietrich and a third man, A. C. Smith, were the company's original stockholders.

When Dietrich, Marien, Sr., and Smith incorporated Superior, 50 shares of its stock were issued to each of them. Smith died in 1959 and his 50 shares were repurchased by the corporation. Marien died in 1961 and his 50 shares were divided among his three sons, defendents herein, and his wife, Clara. Following Marien's death, Dietrich continued to run the business. He was president of the corporation. The board of directors consisted of himself, his daughter, Margaret Schwartz, the plaintiff herein, and two of the defendants, August L. Marien and Robert H. Marien. Dietrich died on March 15, 1968 and plaintiff, as his executrix, acquired her interest in the 50 shares of stock to which he had originally subscribed. The corporation was thus left without a president and with a vacancy on its board of directors.

On May 6, 1968 a special meeting of Superior's remaining three directors was called for the purpose of electing a new president and for filling the vacancy on the board created by Dietrich's death. The notice of the meeting, signed by August Marien as vice-president of the corporation and by Edward Marien as secretary, stated that a further purpose would be "to consider and take action with respect to authorization for the sale and/or purchase of the common capital stock presently held by the heirs of the estate of Girard Dietrich *and treasury stock of the corporation.*" (Emphasis added.)

At this time plaintiff's 50 shares represented one half of the outstanding voting stock of the company. The Marien brothers, who each owned 8 shares, and their mother, who owned 26, controlled the other 50 outstanding shares, and 50 shares were held by the corporation as treasury stock after being repurchased from A. C. Smith in 1961.

The first order of business at the May 6 meeting, which plaintiff attended, was to fill the vacancy on the corporation's board of directors. Edward Marien, who had been secretary

of the company but not a board member, was elected to the board on the vote of his two brothers. Plaintiff abstained from voting. Next, Robert Marien was elected president. Again plaintiff abstained from voting. A motion was then passed authorizing Robert Marien, as president, to negotiate on behalf of the corporation for the repurchase of the 50 shares of stock held by plaintiff as executrix of her father's estate. Then, Robert Marien announced that the corporation had received offers from five persons, including himself, his two brothers and two of the corporation's employees, Edward Kasprzak and Louis Zimmerman, each to purchase one share of the corporation's treasury stock at a price of $1,200 per share. Plaintiff had no prior notice that such offers would be made and asked questions concerning them. She was told that the stock on which the offers had been received was part of the block of 50 shares repurchased from A. C. Smith and that no prior effort had been made to dispose of it because no other offer had ever been received. A resolution was then adopted, on the vote of the three Marien brothers, accepting the offers and approving the sale. No business reason was advanced for selling the stock and the meeting was adjourned. The result of the sale was to increase the number of outstanding voting shares of the corporation's stock from 100 to 105 and thereby to reduce plaintiff's proportionate interest from 50% to 47.6%.

At the plaintiff's request, another special meeting of Superior's board of directors was convened on May 20, 1968. At this meeting she made an offer to purchase an equal number of shares of the corporation's treasury stock as was purchased by the others on May 6. Her offer, however, was refused and on July 25, 1968, at a meeting of Superior stockholders, the Mariens, Kasprzak and Zimmerman voted their newly-acquired shares to remove her from the board of directors.

Plaintiff commenced the instant action just prior to the July 25, 1968 stockholders' meeting. She originally sought a preliminary injunction to bar the meeting and demanded that the three Marien brothers, Kasprzak and Zimmerman, all of whom were named as defendants, be required to tender the five shares of treasury stock they purchased back to the corporation. Her request for an injunction was denied, however, and subsequently her action against Kasprzak and Zimmerman was dismissed on the ground that her complaint failed to allege that they conspired with the Mariens to defraud her of her interest in the corporation. These events rendered her origi-

nal demand for relief unattainable and she now asks that a judgment be entered, pursuant to CPLR 3017, voiding the July 25 stockholders' meeting and directing defendants August, Robert and Edward Marien to restore her to her former position as holder of a 50% voting interest in the corporation by selling her five shares of the company's remaining treasury stock at a price equal to that which they paid for the same stock on May 6, 1968.

Both parties moved at Special Term for summary judgment but their motions were denied on the ground that the pleadings and papers before the court presented material issues of fact requiring a plenary trial. Plaintiff has appealed from that determination. Plaintiff also made a motion returnable before us on the date of the argument of this appeal for an order striking from defendants' brief an examination before trial of plaintiff. This matter is not a part of the stipulated record and should not be considered on appeal (*Mills* v. *Liberty Mut. Ins. Co.*, 30 N Y 2d 546; *Ray* v. *Ray*, 34 A D 2d 517; *Saraceno* v. *Piscopo*, 16 A D 2d 735).

CPLR 3212 (subd. [b]) requires the court to deny summary judgment if any party shows facts sufficient to warrant a trial. Summary judgment is a drastic remedy and should not be granted where the pleadings raise clear and genuine issues of fact or even where the existence of such an issue is arguable (*Stone* v. *Goodson*, 8 N Y 2d 8; *Falk* v. *Goodman*, 7 N Y 2d 87). However, the factual issue presented must be genuine, bona fide, and substantial to require a trial (*Leumi Fin. Corp.* v. *Richter*, 24 A D 2d 855, affd. 17 N Y 2d 166) and, if there is nothing in truth to be tried, summary judgment should be granted (*Goodwill Adv. Co.* v. *State Liq. Auth.*, 40 Misc. 2d 886, affd. 19 A D 2d 928).

In the instant case both parties moved for summary judgment and both assert that there are no factual issues in dispute between them. While this alone does not bind the court to render summary judgment in favor of one or the other (*Werfel* v. *Zivnostenska Banka*, 287 N. Y. 91; *Read* v. *Lehigh Val. R. R. Co.*, 284 N. Y. 435; *R. M. & B., Inc.* v. *R. G. S. Realty Corp.*, 28 Misc 2d 679), it is a factor which we may consider, after independently reviewing the evidence, in arriving at our determination (*Hartford Acc. & Ind. Co.* v. *Wesolowski*, 33 N Y 2d 169).

I am convinced that on the pleadings and proof before us in this case no disputed issue of fact is presented and it was error to deny the parties the summary adjudication which they

requested. Summary judgment should be used to expedite and not to delay disposition of actions (*Pollak* v. *Lake Tibet Estates*, 19 A D 2d 747) and its purpose is to avoid needless trials (*Chance* v. *Guaranty Trust Co. of N. Y.*, 173 Misc. 754, affd. 257 App. Div. 1006). Furthermore, where there is no dispute upon the facts and but one conclusion can be drawn therefrom, the question may be decided as one of law (*Harbin* v. *Harbin*, 218 N. Y. S. 2d 308, affd. 16 A D 2d 696).

The facts presented in this case do not permit the drawing of more than one inference. That inference is that defendants embarked upon a plan of action designed to reduce plaintiff's percentage stock interest in the corporation and thereby insure control to the members of the Marien family. Three of the Mariens, along with plaintiff, were directors of the corporation. They voted together at the May 6 directors' meeting to deprive plaintiff of her percentage interest in the corporation's outstanding stock, on May 20 they refused plaintiff's offer to buy additional shares to restore her 50% ownership, and at the July 25 stockholders' meeting they voted together to further impair her standing in the corporation by naming another to replace her as director.

The only question thus presented is whether, on this set of facts, plaintiff is entitled to relief and, if so, what remedy is available to her.

It is axiomatic that directors and officers of a corporation owe a fiduciary duty both to the corporation and its shareholders to deal honestly in corporate affairs. It has been said that they are bound by all those rules of conscientious fairness, morality and honesty in purpose that bind a trustee of a *cestui que* trust and that they are held, in official action, to the extreme measure of candor, unselfishness and good faith (*Kavanaugh* v. *Kavanaugh Knitting Co.*, 226 N. Y. 185). In situations involving the issuance of new stock to increase a corporation's capitalization, it has long been recognized that directors may not authorize the issuance of such stock to themselves for the primary purpose of converting them from minority to majority stockholders (*Dunlay* v. *Avenue M. Garage & Repair Co.*, 253 N. Y. 274) and it also has been held that circumstances may exist in which this same principle might apply to the purchase by directors of treasury stock, thereby giving rise in equity to a right in the shareholders to purchase an equivalent number of shares for themselves so that they might protect their proportionate interest in control of the company from dimunition (*Hammer* v. *Werner*, 239 App. Div. 38). In

the *Hammer* case (*supra*), the court said in essence, that when directors of a corporation secretly purchase its treasury stock to increase their proportionate share in both the control of the corporation and in its surplus upon dissolution, there is a breach of duty to the shareholders and the resulting wrong may be redressed as a violation of fiduciary responsibilities, thereby giving rise, in effect, to a pre-emptive right in the shareholders to purchase an equivalent amount of stock.

The *Hammer* case is authority that section 622 (subd. [e], par. [4]) of the Business Corporation Law, which denies corporate shareholders a pre-emptive right to purchase treasury stock, is not an inflexible rule. It is inapplicable to situations where corporate directors breach their fiduciary duty to shareholders by secretly purchasing such stock for themselves, without significant business justification, for the sole purpose of increasing their proportionate share in the company.

In the instant case plaintiff does not assert any statutory pre-emptive right to participate ratably with defendants in the purchase of Superior's treasury stock but asks in equity that a right be created for her under the circumstances of this case by directing defendants to make five shares of Superior's remaining treasury stock available for her to purchase at a unit price of $1,200. Equity will not suffer a wrong without a remedy (2 Pomeroy, Equity Jurisprudence [5th ed.], § 363) and the propriety of ordering the type of relief demanded by plaintiff has been established in New York as well as in other jurisdictions (*Albrecht, Maguire & Co.* v. *General Plastics*, 256 App. Div. 134, affd. 280 N. Y. 840; *Schmidt* v. *Pritchard*, 135 Iowa 240; *Falk* v. *Dirigold Corp.*, 174 Minn. 219; Ann. 138 A. L. R. 536; Ann. 52 A. L. R. 241).

The events in this case, when reviewed in their entirety, show a deliberate and calculated plan to reduce plaintiff's stock interest in defendant corporation to less than 50% and to remove her from any control over its operation. The actions of the individual defendants had the effect of reducing the value of her stock, the purchase of which they had been negotiating and were hopeful, because of their machinations, of acquiring at a lesser price than plaintiff had been seeking.

The Mariens never denied that the extra stock was purchased for the purpose of diminishing plaintiff's interest in the corporation nor did they offer any other reason for the sale until after plaintiff commenced her suit when, for the first time, they claimed as a defense that the transactions were consummated as part of an employee stock program. However, it is significant that

the stock program which they claimed as justification for their actions was abandoned several years before the May 6 directors' meeting and no formal evidence of any such plan was then presented.

I would reverse the order of Special Term denying plaintiff summary judgment and grant judgment directing defendants to sell plaintiff five shares of treasury stock for $1,200 per share and issue a certificate therefor, and annulling the election of July 25 which removed plaintiff as director and filled the vacancy caused thereby.

DEL VECCHIO, J. P., MARSH, WITMER and SIMONS, JJ., concur in *Per Curiam* opinion; MOULE, J., dissents and votes to reverse and grant plaintiff's motion, in an opinion.

Order affirmed without costs. Plaintiff's motion to strike matter appearing in defendants' brief granted.