HARRY GREENFIELD, Individually and on Behalf of CLERMONT CRAVAT COMPANY, INC., Appellant-Respondent, *v.* HARRY B. DENNER et al., Respondents-Appellants, et al., Defendant.

First Department, July 1, 1958.

264

*Joseph Calderon* of counsel (*Milton M. Bergerman* with him on the brief; *Bergerman & Hourwich,* attorneys), for appellant-respondent.

*George Trosk* for Harry B. Denner and another, respondents-appellants.

*Schlesinger & Krinsky* for Sidney Nitchun and others, respondents-appellants.

*Per Curiam.* The complaint pleads two causes of action. The first is an individual action at law for damages caused to plaintiff's investment in Clermont Cravat Company, Inc. by means of an allegedly fraudulent liquidation of that corporation. The second cause of action is an action in equity on behalf of the corporation to recover for damages resulting from the liquidation of its business and misappropriation of its assets and good will by defendants.

Plaintiff appeals from so much of the order of Special Term as dismissed the first cause of action as insufficient and which denied, as academic, that part of the plaintiff's motion to dismiss the defense pleaded to the first cause of action.

In the first cause of action it is alleged that plaintiff owned 30% of the stock of Clermont, and defendants Denner and Nitchun owned the remaining 70%. A stockholders' agreement contained provisions restricting the alienation of the capital stock, setting forth that any salary or compensation paid by Clermont to the parties for services should be in proportion to their stockholdings, and giving plaintiff other rights not ordinarily available to a stockholder as such. Defendants Denner and Nitchun demanded that plaintiff withdraw from the corporation and sell his capital stock to them, threatening that if plaintiff refused to do so they would cause the business of the corporation to be liquidated and the corporation dissolved. With no proper business reason for liquidation, and while business was flourishing, the afore-mentioned defendants combined to bring about the dissolution of Clermont, the elimination

of plaintiff's stock interest and the consequent destruction of the stockholders' agreement — all over the protests of plaintiff. Operation of the corporation's factory was discontinued, its lease surrendered, and its machinery and inventory sold at auction. These acts, it is alleged, were not done in good faith but with the intent of eliminating plaintiff's interest in Clermont, as well as his participation in its profits pursuant to the stockholders' agreement, and diverting its business for defendants' individual benefit.

Subsequently, plaintiff alleges, defendants Denner and Nichun, in combination with the other individual defendants, caused the incorporation of defendant Mason Neckwear Co., Inc., which took over the plant, equipment, personnel, designs, samples and unfilled orders of Clermont.

The second cause of action is brought on behalf of Clermont and alleges that the purported dissolution and liquidation was fraudulent as to that corporation.

In *Kavanaugh* v. *Kavanaugh Knitting Co.* (226 N. Y. 185, 197–198) the Court of Appeals said: " We need not state a detailed analysis of the contents of the complaint. Obviously, facts are alleged which permit, if they do not compel, the inference that the directors conceived and progressed the scheme of dissolving the corporation, irrespective of the welfare or advantage of the corporation and of any cause or reason related to its condition or future, through the desire and determination to take from the corporation and to secure to themselves the corporate business freed from interference or participation on the part of the plaintiff. Moreover, allegations of the complaint are, in effect, that the judgment or opinion of the directors was not honest, their action was not the result of good faith, the exercise of an honest judgment and an honest and unbiased consideration of any fact or circumstances affecting the general interests of the corporation and of all of its stockholders, and was in bad faith and for the sole purpose of permitting the individual defendants Kavanaugh to dissolve the corporation for the purpose of depreciating the value of the corporate property and the plaintiff's proportionate interest therein."

The first cause of action, under review here, parallels the complaint in the *Kavanaugh* case. The allegations as to wrongful acts and motives on the part of defendants are practically identical; and the Court of Appeals held unequivocally that they were sufficient to support an action for injunctive relief.

True, in the *Kavanaugh* case, an injunction only was sought against apprehended injuries, whereas here plaintiff in the

first cause of action seeks damages for the accomplished injuries. If it appeared that plaintiff could secure equivalent relief for the damages he has suffered by means of a derivative action, we would be inclined to dismiss the first cause of action. However, accepting the allegations of the first cause of action at face value, it appears that plaintiff asserts damages which could not be recovered in any derivative action — possibly damages flowing from the destruction of the stockholders' agreement.

We cannot accept the view urged, namely, that the directors had the unqualified right to dissolve the corporation if so advised. They could do that only if acting in *good faith* and in the best interests of the corporation. That, we think, is the clear holding of the *Kavanaugh* case: " The directors, in reaching their belief, cannot consider or give weight to their personal wishes, comfort or advantage. Whether or not the dissolution is wise or expedient for themselves as apart from the corporation or any or all of the other stockholders they can neither question nor determine. Their action must be based upon the belief that the interests and welfare of the corporation and the stockholders generally will be promoted by the dissolution. * * * The directors are bound by all those rules of conscientious fairness, morality and honesty in purpose, which the law imposes as the guides for those who are under the fiduciary obligations and responsibilities. They are held, in official action, to the extreme measure of candor, unselfishness and good faith." (226 N. Y. 185, 192–193.) The first cause of action is replete with factual allegations of bad faith and selfish motives on the part of the directors.

Moreover, the distinctive characteristics of the " close " corporation, as distinguished from the publicly held corporation, require a realistic approach to the problems presented by that method of conducting business. (See " A Plea for Separate Statutory Treatment of the Close Corporation ", 33 N. Y. U. L. Rev., 700–745 [May, 1958]; " Statutory Assistance for Closely Held Corporations ", 71 Harv. L. Rev. 1498–1516 [June, 1958].) Plaintiff, a 30% stockholder in a three-man corporation, does not in the first cause of action sue for vindication of a corporate right against his allegedly wrongdoing partners, but seeks to enforce a personal claim. The charges made include a violation of a pre-incorporation agreement as well as activities by the defendants which have diminished the value of his stock. Evidence may be introduced under the first cause of action of damages suffered by plaintiff in his individual right that are not recoverable through the channels of

the derivative stockholder's action. While the corporation may have an interest in requiring the individual defendants to account for some of their alleged acts — and the second cause of action brought in a derivative capacity asserts that right — the corporation has not an enforcible claim as to other aspects of plaintiff's suit. We should recognize plaintiff's separate cause of action for wrongs allegedly done to him as distinct from those for which the corporation may seek redress.

We reach the conclusion that the first cause of action is sufficient as a pleading and should not have been dismissed. In so holding we are then required to pass upon the defense of estoppel pleaded to the first cause of action, based largely on plaintiff's failure to take legal action to prevent the liquidation. Having dismissed that cause of action, Special Term did not pass on that defense.

The sole basis of this defense is that plaintiff took no action to restrain defendants judicially from proceeding with their wrongful course of proposed action, although he had been made aware of their intentions for several months before consummation of the plan. However, defendants do admit that they acted against the repeated protests of plaintiff; and assert that they went ahead with their announced plans "in reliance on such inaction" (to institute restraining litigation).

The defense of estoppel is never considered unless and until plaintiff has proven that defendants acted in bad faith to freeze him out of the business. For the purposes of the defense under consideration, since it is asserted in the nature of an avoidance, the acts of defendants must be assumed to have been fraudulent, as alleged in the complaint. This fraud or bad faith must mean something more than a distaste for plaintiff and a desire to terminate the relationship; there must be some illegality, gross impropriety, or breach of trust. Their bad faith having been proven, defendants can scarcely raise a defense grounded on good conscience and fair dealing (*People* v. *Wirtschafter,* 305 N. Y. 515, 524). "There can be no estoppel against dishonest conduct" (*Angerosa* v. *White Co.,* 248 App. Div. 425, 433–434, affd. 275 N. Y. 524; *Crowell-Collier Pub. Co.* v. *Josefowitz,* 9 Misc 2d 613, 615, affd. 5 A D 2d 987; 31 C. J. S., Estoppel, § 75).

Moreover, to sustain an equitable defense to a law cause of action there must be available all of the elements of an estoppel *in pais.* Delay and irreparable change of position by the parties invoking estoppel, while necessary, are not enough, as they might be if the defense were that of laches in equity, or more accurately here, the quasi estoppel of acquiescence. (*Weiss* v. *Mayflower Doughnut Corp.,* 1 N Y 2d 310, 318;

*Galway* v. *Metropolitan El. Ry. Co.*, 128 N. Y. 132, 152–156; 3 Pomeroy on Equity Jurisprudence [5th ed.], § 816 *et seq.*, but especially § 819.) Before the legal defense can be made out, there must be some act or omission on the part of the party legally estopped, which he was bound to do or abstain from doing, working to the irreparable change of position of the parties invoking the estoppel (31 C. J. S., Estoppel, § 59).

Clearly, in this case, if plaintiff was the target of a legal wrong, he had no obligation to sue to prevent defendants from doing him damage. The day has not yet been reached when the victim must enjoin the thief or lose his right to recover his stolen property or its money worth. If plaintiff proves his legal cause of action he will have proven a clear legal right to relief. Short of a Statute of Limitations defense or a complete estoppel *in pais*, that right may not be denied (*Galway* v. *Metropolitan El. Ry. Co.*, *supra*). It is not sufficient to suggest that an estoppel may result from a "failure to take legal action" when it is possible (if not utterly certain) that plaintiff had no legal duty to take legal action.

In equity the answer is more simple as to when the defense of laches may lie. Equity will deny its discretionary relief — but only its discretionary relief — when plaintiff has rested on his rights, done nothing, while to his knowledge, defendants changed their position to their irreversible detriment (*Groesbeck* v. *Morgan*, 206 N. Y. 385, 389; *Calhoun* v. *Millard*, 121 N. Y. 69, 82–83). But however relevant laches or acquiescence may be to those parts of the second cause of action which seek discretionary relief, quite clearly they are irrelevant to the first cause of action.

In other words, defendants nowhere allege that had plaintiff sought judicial relief they would have abandoned their illegal plan. Rather, they seem to tax plaintiff with not having gone to litigation in order to save them from the consequences of their own wrongful conduct. However, if defendants are in a position to plead properly other facts that can sustain an estoppel against this action at law, they may amend their pleadings, if so advised.

Accordingly, the order appealed from should be reversed on the law so as to deny defendants' motion to dismiss the first cause of action and to grant plaintiff's motion to dismiss the affirmative defense thereto, with leave to replead, if so advised, with costs to abide the event.

BREITEL, J. (dissenting). I find it necessary to dissent from the conclusions reached and the reasoning adopted by the majority.

In the first place, if the first cause of action is for damage to plaintiff's ''investment'', then, by definition, all damage to the investment is damage to the corporation, and the derivative cause of action in the complaint provides unrestricted scope to assess and recover that damage. This seems to be the uniform teaching of the authorities (*Gordon* v. *Elliman,* 306 N. Y. 456, 466; *Kavanaugh* v. *Commonwealth Trust Co.,* 181 N. Y. 121, 124; *Niles* v. *New York Cent. & Hudson Riv. R. R. Co.,* 176 N. Y. 119, 124; *Spiegelman* v. *Elfenbein,* 232 App. Div. 651; Ballantine on Corporations, § 143; 13 Fletcher Cyclopedia of Corporations, § 5913; Glenn: '' The Shareholder's ' Individual ' Suit '', 38 Yale L. J. 965; Ann. 167 A. L. R. 279).

Moreover, there is a practical consequence in converting the derivative claim into a '' personal '' claim. Plaintiff by not taking the necessary steps within the corporate frame to prevent a '' bad faith '' dissolution evades the election and appraisal procedure provided by sections 20 and 21 of the Stock Corporation Law, with probably markedly different financial consequences.

Thus, it is apparent that plaintiff's claim of bad faith, in order to sustain an individual cause of action at law, must rest on more than defendants' desire to continue without him. Thus, too, it is not sufficient that defendants practiced a fraud or committed a breach of trust. The fraud or breach of trust will support a derivative action. Thus, unless there is direct damage personal to plaintiff, he may not sue in his individual capacity. Of course, if plaintiff had been the victim of fraud, deceit or bad faith practiced upon him in the liquidation of the corporation's assets, so that he — not the corporation — shares in less than the full value of his stock interest, then he will have, and should have, an individual cause of action. So too, if the proceedings in dissolution were improper so that they resulted in individual damage to him, as contrasted with damage to the corporation, or were in breach of the personal stockholders' agreement or some other determined personal relationship, then he would have an individual cause of action. Notably, plaintiff never asserts that the stockholders' agreement with his two associates had any fixed term, nor does he allege any breach of the stockholders' agreement. It was conceded on argument that the majority stockholders had an unrestricted right to dissolve the corporation, provided no improper means were used in disposing of corporate assets, including good will. Giving the complaint a most liberal interpretation, it alleges no more than an improper disposition of good will vis-a-vis the corporation, and not the plaintiff.

So, in *Gordon* v. *Elliman* (306 N. Y. 456, 466, *supra*), the court quoted from *Von Au* v. *Magenheimer* (126 App. Div. 257, affd. 196 N. Y. 510) to the effect that: "A stockholder cannot maintain a personal action for a wrong to the corporation merely because the indirect result is a diminution in the value of his shares (*Niles* v. *N. Y. C. & H. R. R. R. Co.*, 176 N. Y. 119). Had the conspiracy in this case been unsuccessful [i.e. if plaintiff had not sold her shares] there would have been no direct injury personal to the plaintiff, and she might have succeeded by appropriate action in restraining the payment of the increased salaries and in compelling a proper distribution of earnings."

Almost the precise situation involved in this case came before this court in *Spiegelman* v. *Elfenbein* (232 App. Div. 651, *supra*). At that time Mr. Justice Finch, dissenting alone, made argument for sustaining an alternative individual cause of action at law on behalf of a 50% stockholder who was "frozen out". In doing so he, too, relied on *Kavanaugh* v. *Kavanaugh Knitting Co.* (226 N. Y. 185, 193).

The *Kavanaugh* case is not authority for an individual action at law by a stockholder for damage to his investment. It is authority for an action in equity by a member of the corporation to restrain illegal acts planned by faithless directors of the corporation, the illegality stemming from the design to injure the minority investment. The relief was not a disbursement of moneys to the personal purse of the stockholder, but restraint of the faithless directors from effecting damage to the corporation and through the corporation, the stockholder's investment — quite a different matter. In that situation, in equity, it makes no procedural or substantive difference whether the action is brought in the individual name of the stockholder, or derivatively in the name of the corporation. Either way the corporation and only the corporation benefits directly from the relief granted. (However, the *Kavanaugh* case does present a striking parallel in support of the second and derivative cause of action, despite the absence of any allegation that there was a contract fixing a term for the endurance of the corporation.)

Involved is no mere question of historical or procedural precedents. Nor is the question one merely of alternative remedies which will lead to substantially the same results. Under the statutes providing for dissolution and appraisal of the interests of dissenting stockholders (Stock Corporation Law, § 20 *et seq.*; § 105 *et seq.*) a disadvantaged stockholder has provided for him the means to capture the cash value of his investment. In that connection all factors going to the value

of that interest may be considered. When damage is inflicted on the corporation, as distinguished from the stockholder's own interest, the mode of relief and the quantity of damages will be related to the corporation, not only to the time of the wrongful act but projected into the future to cover misuse or waste of corporate assets. If the stockholder is given an individual cause of action at law with respect to that misuse or waste of corporate assets, his rights, too, are projected into the future, although, as is seen in this case, he neither claims nor establishes such right to continuance. Consequently, to confuse the remedies is to confuse different substantive rights.

Of course, if there is any doubt whether plaintiff has some cause of action based on an individual right, he should be granted leave to replead. This is particularly the situation when it is recognized that the stockholders' agreement is not a part of the record or the pleading. Yet the majority position rests upon inferences flowing from an agreement not before the court and concerning which there are no allegations of breach.

Accordingly, so much of the order dismissing the first cause of action should be affirmed, on the law, and so much of the order denying the motion to dismiss the first affirmative defense to the first cause of action should be affirmed as academic.

BOTEIN, P. J., RABIN, VALENTE and BERGAN, JJ., concur in *Per Curiam* opinion; BREITEL, J., dissents in opinion.

Order reversed on the law so as to deny defendants' motion to dismiss the first cause of action and to grant plaintiff's motion to dismiss the affirmative defense thereto, with leave to replead, if so advised, with costs to abide the event.

Settle order.