FIDELIS CORPORATION, Richard T. Lovelace, Bartlett Burnap, William S. Fryer and Hearsh Bros., a partnership, Plaintiffs,

v.

LITTON INDUSTRIES, INC., Defendant.

No. 67 Civ. 3662.

United States District Court
S. D. New York.

Sept. 24, 1968.

Davis & Cox, New York City, for plaintiffs, Maxwell E. Cox, Howard M. Jaffe, New York City, of counsel.

Webster, Sheffield, Fleischmann, Hitchcock & Brookfield, New York City, for defendant, James V. Ryan, Byron Keith Huffman, Jr., New York City, of counsel.

## OPINION

BONSAL, District Judge.

Plaintiff Fidelis Corporation (Fidelis) and plaintiffs Lovelace, Burnap, Fryer, and Hearsh Bros., on behalf of themselves and the other beneficial owners of Fidelis common stock (the individual plaintiffs) instituted this action against defendant Litton Industries, Inc. (Litton). The complaint alleges that Litton violated

(a) Sections 5 and 12(1) of the Securities Act of 1933 (the 1933 Act), (15 U.S.C. §§ 77e, 77l(1));

(b) Sections 12(2) and 17(a) of the 1933 Act (15 U.S.C. §§ 77l(2), 77q(a));

(c) Section 10(b) of the Securities Exchange Act of 1934 (the 1934 Act) (15 U.S.C. § 78j(b)) and Rule 10b-5 promulgated pursuant thereto (17 C.F.R. § 240.10b-5);

(d) contractual obligations and fiduciary duties; and

(e) the common law of fraud and deceit,

with respect to a transaction, described more fully below, by which Litton acquired in 1964 substantially all the assets of Fidelis in exchange for shares of Litton common stock (Litton stock).

In January 1964, Litton and Fidelis, then known as Advance Data Systems Corporation, entered into negotiations with respect to Litton's acquisition of substantially all the assets of Fidelis in exchange for Litton stock. Under an agreement signed on January 31, 1964 (the Acquisition Agreement), Litton acquired substantially all the assets of Fidelis and in exchange therefor agreed to issue Litton stock up to the value of $360,000 (Initial Consideration) and thereafter an additional amount of Litton stock (Additional Consideration) dependent upon the earnings of the Fidelis assets for the five years following the acquisition, such Additional Consideration, together with Initial Consideration, not to exceed $20,000,000 in value of Litton stock. The amount of Litton stock to be issued as Initial Consideration and Additional Consideration depended upon an election by each Fidelis shareholder as to whether he would prefer to receive a portion of the Initial Consideration or only a portion of the Additional Consideration.

On January 23, 1964, Fidelis' Board of Directors approved a Plan of Liquidation and Dissolution (the Plan) which incorporated the principal features of the Acquisition Agreement.

On January 28, 1964, Fidelis' Board of Directors submitted to each of the Fidelis shareholders (1) the Plan; (2) the Acquisition Agreement; (3) a Consent Form to be signed if the shareholder approved the Plan and the Acquisition Agreement; (4) a form on which the shareholder could elect whether and the extent to which he desired to receive a portion of the Initial Consideration; and (5) a copy of Schedule J to the Acquisition Agreement which described the manner in which Litton proposed to operate the Fidelis assets.

The holders of about 97% of the common stock of Fidelis approved the Plan and Agreement. By January 31, 1964, the Fidelis shareholders had elected as to whether they wished to receive Initial Consideration.

The memorandum of the closing which took place on February 17, 1964, indicates that Litton stock having a value of $324,000 was issued to Fidelis as the Initial Consideration and was distributed by Fidelis to the shareholders electing to receive Initial Consideration. According to the affidavit of the Secretary of Fidelis, Fidelis shareholders owning approximately one-third of its outstanding shares elected not to receive Litton shares issued as Initial Consideration, and no Additional Consideration has been issued by Litton. From the papers, it appears that on April 19, 1967, Litton addressed a letter to the Fidelis Shareholders Protective Committee stating that the financial performance of the Fidelis assets under the Litton management did not warrant any Additional Consideration under the Acquisition Agreement.

Litton moves (1) for an order, pursuant to Rule 56, F.R.Civ.P., (a) dismissing all claims based upon a violation of sections 5 and 12(1) of the 1933 Act; and (b) dismissing all claims alleged on behalf of the individual plaintiffs and the class they purport to represent; and (2) for an order pursuant to Rule 23, F.R.Civ.P., directing that the individual plaintiffs' action is not maintainable as a class action.

## MOTION TO DISMISS CLAIMS UNDER SECTIONS 5 and 12(1)

Section 5 of the 1933 Act provides that "unless a registration statement is in effect as to a security, it shall be unlawful for any person * * * to sell such security * * *."

Section 12(1) of the 1933 Act provides for civil liability for any person who violates Section 5.

It is conceded by the parties that Litton did not file a registration statement with respect to the securities it issued in exchange for the Fidelis assets. However, Litton claims an exemption from the necessity of filing a registration statement by virtue of Rule 133 of the General Rules and Regulations promulgated pursuant to the 1933 Act (17 C.F.R. § 230.133). Rule 133 provides that

(a) For purposes only of section 5 of the Act, no "sale", "offer", "offer to sell", or "offer for sale" shall be deemed to be involved so far as the stockholders of a corporation are concerned where, pursuant to statutory provisions in the State of incorporation * * * there is submitted to the vote of such stockholders * * * a proposal for the transfer of assets of such corporation to another person in consideration of the issuance of securities of such other person * * * under such circumstances that the vote of a required favorable majority (1) will operate to authorize the proposed transaction so far as concerns the corporation whose stockholders are voting * * * and (2) will bind all stockholders of such corporation except to the extent that dissenting stockholders may be entitled * * * to receive the appraised or fair value of their holdings.

Litton contends that the "no-sale" provision of Rule 133 applies to this transaction and moves to dismiss the claims of Fidelis and the individual plaintiffs under sections 5 and 12 of the 1933 Act.

Fidelis and the individual plaintiffs contend that Rule 133 does not apply to

this transaction because the vote of the Fidelis shareholders did not determine the amount of Litton stock the Fidelis shareholders would receive or the number which would be distributed. Therefore, Fidelis and the individual plaintiffs argue that the vote of the required favorable majority did not bind all the Fidelis shareholders, as required by Rule 133(a) (2).

As a corporation organized under the laws of California, Fidelis could not sell all or substantially all of its assets except

"under authority of a resolution of its board of directors and with the approval of the principal terms of the transaction and the nature and amount of the consideration by vote or written consent of shareholders entitled to exercise a majority of the voting power of the corporation * * *" (Section 3901(b), California Corporation Code.)

It is conceded that section 3901(b) was complied with; therefore, the only question is whether Rule 133 has likewise been complied with, since each shareholder had an election to choose the nature of the compensation he would receive.

■■ Rule 133 exempts from the registration requirements of the 1933 Act the shares of a corporation issued to another corporation pursuant to an acquisition agreement in exchange for that other corporation's assets. Sowards, Federal Securities Act § 2.03 [1] [iii], in 11 Business Regulation—Securities Regulation. However, Rule 133 does not exempt transactions where the stockholders of the selling corporation may individually accept or reject an offer of a new security in exchange for their old stock. 1 Loss, Securities Regulation 521 (2d ed. 1961). The requirements of Rule 133 were met here. Pursuant to section 3901(b), California Corporation Code, the Fidelis shareholders voted to approve the Acquisition Agreement and thereby authorized the sale of substantially all the Fidelis assets to Litton, and bound themselves to the Acquisition Agreement.

Therefore, since Rule 133 exempts the issuance of the Litton stock to Fidelis from sections 5 and 12(1) of the 1933 Act, Litton's motion to dismiss those sections of the complaint alleging violations of sections 5 and 12(1) is granted.

## MOTION TO DISMISS CLAIMS ALLEGED BY INDIVIDUAL PLAINTIFFS

Litton moves to dismiss the remaining claims alleged in the complaint on the grounds that (1) the individual plaintiffs lack the capacity to sue as individuals; and (2) the individual plaintiffs were not purchasers of securities from Litton.

### 1. *Capacity to sue*

First, as to the individual plaintiffs' capacity to sue, the individual plaintiffs allege *inter alia* that they are shareholders of Fidelis, that Litton made fraudulent and materially false representations to them for the purpose of inducing them to agree to the sale of the Fidelis assets to Litton and to take Additional Consideration, when and if issued, instead of their proportionate part of the Initial Consideration, and that some of the plaintiffs elected to take Additional Consideration, when and if issued, and not to take Initial Consideration. The plaintiffs point out that in fact no Additional Consideration was issued.

■■ Although usually shareholders do not have the capacity to sue individually for wrongs committed against the corporation, see Berzin v. Litton Industries, Inc., 24 A.D.2d 740, 263 N.Y. S.2d 485 (1965); Evangelista v. Longo, 13 A.D.2d 834, 216 N.Y.S.2d 194 (1961); Sutter v. General Petroleum Corp., 28 Cal.2d 525, 170 P.2d 898, 167 A.L.R. 271 (1946), here the individual plaintiffs allege more than injury to the corporation; they allege that they were individually injured when they relied on fraudulent representations made directly to them by Litton. In such a situation, the individual plaintiffs, as well as the corporation, may maintain a cause of action

for fraudulent misrepresentation. Greenfield v. Denner, 6 A.D.2d 263, 175 N.Y.S. 2d 918, 925 (1958) (dissent), dissenting opinion adopted on appeal, 6 N.Y. 2d 867, 188 N.Y.S.2d 986, 160 N.E.2d 118 (1959); Sutter v. General Petroleum Corp., supra 170 P.2d at 901; Coronado Development Corp. v. Millikin, 175 Misc. 1, 22 N.Y.S.2d 670, 674 (Sup.Ct. 1940); Hammer v. Werner, 239 App.Div. 38, 265 N.Y.S. 172 (1933); Fletcher, Cyclopedia Corporations § 5911 et seq. (1961 ed.); Comment, The Shareholder's "Individual" Suit, 38 Yale L.J. 965 (1929). See also Willcox v. Harriman Securities Corp., 10 F.Supp. 532 (S.D. N.Y.1933); Witherbee v. Bowles, 201 N.Y. 427, 95 N.E. 27 (1911); Vogt v. Vogt, 119 App.Div. 518, 104 N.Y.S. 164 (1907).

Therefore, the individual plaintiffs have the capacity to sue Litton.

### 2. *Plaintiffs as Purchasers*

 Litton's second ground is that the individual plaintiffs were not purchasers of securities and, therefore, cannot maintain this cause of action. Under sections 12(2) [1] and 17(a) [2] of the 1933 Act, the individual plaintiffs must be purchasers of securities, and, under most circumstances, under section 10(b) of the 1934 Act and Rule 10b–5,[3] promulgated pursuant thereto, the individual plaintiffs must be purchasers or sellers of securities. Here, the individual plaintiffs did not purchase Litton stock directly from Litton. Under the Acquisition Agreement, Litton was to issue the Litton stock to Fidelis in amounts determined by the vote of the Fidelis shareholders and Fidelis was to distribute the stock to its shareholders immediately upon its receipt from Litton and "none of such shares shall be retained by [Fidelis] for any reason whatsoever." The Fidelis shareholders were to deliver to Fidelis, and Fidelis was to cancel, their Fidelis shares.

In choosing between Initial Consideration or Additional Consideration, the Fidelis shareholders contend that they relied on the representations made by Litton and that in effect they were "purchasing" Litton stock in reliance on the direct representations made to them by Litton.

 Since the Fidelis shareholders had an election as to how much Litton stock they would receive from Litton through Fidelis, they are deemed to be purchasers for the purpose of this motion. Sections 3(a) (13) and 3(a) (14) of the 1934 Act, 15 U.S.C. § 78c(a) (13) and § 78c(a) (14), define the term "pur-

---

1. Section 12(2) of the 1933 Act provides that

 "Any person who

 (2) offers or sells a security * * * by the use of any means * * * [of] communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements * * * not misleading * * *

 shall be liable to the person purchasing such security from him * * *."

2. Section 17(a) of the 1933 Act provides in part that

 "It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of * * * communication in interstate commerce or by the use of the mails * * *

 (1) to employ any device, scheme, or artifice to defraud * * *."

3. Section 10 of the 1934 Act provides that "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, * * *.

 (b) To use or employ, in connection with the purchase or sale of any security * * * any manipulative or deceptive device or contrivance * * *."

 Rule 10b–5 of the General Rules and Regulations promulgated pursuant to the 1934 Act provides in part that "It shall be unlawful for any person, directly or indirectly, by the use of any means * * * of interstate commerce, or of the mails, * * *

 (1) to employ any device, scheme, or artifice to defraud * * *

 in connection with the purchase or sale of any security."

chaser" to "include any contract to buy, purchase, or *otherwise acquire*" and the term "sale" to "include any contract to sell or *otherwise dispose of*." (Emphasis added.) Section 2(3) of the 1933 Act, 15 U.S.C. § 77b(3), defines the term "sale" to "include every contract of sale or *disposition of a security * * * for value*." (Emphasis added.) This broad language indicates a Congressional intent not to limit "purchase" and "sale" to traditional face-to-face commercial transactions. Dasho v. Susquehanna Corp., 380 F.2d 262 (7th Cir.), cert. denied sub nom. Bard v. Dasho, 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 470 (1967); United States v. Robertson, 181 F.Supp. 158 (S.D.N.Y.1959).

Therefore, Litton's motion to dismiss the claims of the individual plaintiffs because they lack capacity to sue and are not purchasers is denied.

## MOTION UNDER RULE 23, F.R.CIV.P.

Litton moves, pursuant to Rule 23, F.R.Civ.P., for an order that the individual plaintiffs' action is not maintainable as a class action.

Litton contends that the joinder of all members of the proposed class would not be "impracticable" as required by Rule 23(a) (1), F.R.Civ.P., because (1) there are only about thirty-five owners of Fidelis stock; (2) all interested members of the proposed class are already indirectly participating in the litigation through a "protective committee"; (3) the proposed class members are easily identifiable; and (4) the prospective amount of damages is such that the Fidelis shareholders are likely to pursue their remedies individually.

The individual plaintiffs counter that there are at least seventy beneficial owners of Fidelis shares and that this number is sizable enough to warrant designation as a class and that even if there were only thirty-five Fidelis shareholders, that number would be sufficient to constitute a class.

■ It is true that "courts should not be so rigid as to depend upon mere num-

bers as a guideline on the practicability of joinder; a determination of practicability should depend upon all the circumstances surrounding a case." De-Marco v. Edens, 390 F.2d 836, 845 (2d Cir. 1968). Therefore, although the number of class members is not determinative, it is a significant factor to be considered. See, e. g., Philadelphia Electric Co. v. Anaconda American Brass Co., 43 F.R.D. 452 (E.D.Pa.1968); Lucas v. Seagrave Corp., 277 F.Supp. 338 (D. Minn.1967); Siegel v. Chicken Delight, Inc., 271 F.Supp. 722 (N.D.Calif.1967). The desire of Litton, expressed in their Memorandum, that all of the "interested parties * * * should be required by the court to come to the fore and be identified now in order for all issues to be litigated at one time, instead of piecemeal" could be accomplished more readily in a class action governed by Rule 23, F.R.Civ.P.

■ The fact that the members of the proposed class may be "easily identifiable" is, in this case, as much a factor in favor of a class action as against it. See Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968).

■ In view of the alternative of between thirty-five and seventy individual actions being brought on the same set of facts, see Philadelphia Electric Co. v. Anaconda American Brass Co., supra 43 F.R.D. at 463, the Court is satisfied that the "class is so numerous that joinder of all members is impracticable," Rule 23 (a) (1), F.R.Civ.P.

■ Litton contends that common questions of law and fact do not predominate, Rule 23(b) (1) (3), F.R.Civ.P., since there are conflicting interests among the several sub-classes within the proposed main class. Specifically, Litton argues that there are four sub-classes: (1) the employees of Fidelis and Litton; (2) the directors of Fidelis; (3) the investment banking firm of Mitchum, Jones, & Templeton, and two members of the firm; and (4) the remaining private shareholders; and that possible

claims for fraud, breach of trust, or mismanagement may exist against the members of some of the sub-classes on behalf of the members of some of the other sub-classes. However, the only issues here involved relate to the alleged liability of Litton to the Fidelis shareholders, and, as the individual plaintiffs point out, unless their action is treated as a class action, there is a risk of inconsistent adjudication amongst the Fidelis shareholders.

Rule 23(a) requires that there be "questions of law or fact common to the class." The individual plaintiffs allege that the same misrepresentations and false statements were made to each of them and each seeks to recover for alleged violations of Rule 10b–5, Section 12(2), and Section 17 of the 1933 Act.

The Advisory Committee on the Federal Rules has stated—

> "a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class," (39 F.R.D. 69, 103 (1966).)

See also Fischer v. Kletz, 41 F.R.D. 377, 382 (S.D.N.Y.1966); Kronenberg v. Hotel Governor Clinton, Inc., 41 F.R.D. 42 (S.D.N.Y.1966).

The questions common to the class "predominate over any questions affecting only individual members," Rule 23(b) (3), F.R.Civ.P., despite the possible conflicts which Litton contends exist. The individual plaintiffs allege that Litton made the fraudulent misrepresentations to them. Therefore, the situation is similar to Mersay v. First Republic Corpora-

tion of America, 43 F.R.D. 465 (S.D.N.Y. 1968), where the court held that the interests of the plaintiff as a defrauded shareholder were not inconsistent with those of the class of shareholders, even though the plaintiff was also an insider of the corporation being sued.

■ On the facts here presented, a class action appears superior to other methods of adjudicating this controversy. Rule 23(b) (3), F.R.Civ.P. No other actions have been commenced by the members of the class and the formation of the shareholders' protective committee indicates a desire by the shareholders to have their rights adjudicated together. See Fischer v. Kletz, supra.

■ Finally, Litton has failed to establish that the individual plaintiffs will not fairly and adequately protect the interests of the class.[4]

Litton's motion for an order, pursuant to Rule 56, F.R.Civ.P., dismissing all claims based upon a violation of sections 5 and 12(1) of the 1933 Act is granted; Litton's motion for an order, pursuant to Rule 56, dismissing all claims alleged on behalf of the individual plaintiffs, is denied; Litton's motion for an order, pursuant to Rule 23, F.R.Civ.P., directing that the individual plaintiffs' action is not maintainable as a class action, is denied.

The individual plaintiffs are directed to settle a proposed order directing that the action of the individual plaintiffs shall be maintained as a class action under Rule 23, setting forth the manner in which notice shall be given pursuant to Rule 23(c) (2), and providing that the class action shall be joined with the Fidelis action.

Settle order on notice.

---

4. Compare City of New York v. Int'l Pipe and Ceramics Corp., 44 F.R.D. 584 (S.D. N.Y.1968), where "only a very small number" of the potential class members had any contact with the defendants, so that the court held that the plaintiff would not adequately represent the interests of the other members of the proposed class.