# First Department, July, 1983

## (July 7, 1983)

█ Raymond N. Rossi, Respondent, v Fred J. Kelly et al., Appellants, et al., Defendants. — Order, Supreme Court, New York County (Louis Kaplan, J.), entered on November 18, 1982, which denied the motion of the defendants Carlin Construction & Development Corp., Carlin-Kelly-Lawson and William V. Lawson for summary judgment and the cross motion of the defendants, Fred J. Kelly Construction, Inc., and Fred J. Kelly for like relief, is modified, on the law, to the extent of granting summary judgment and dismissing the complaint as against Fred J. Kelly, Fred J. Kelly Construction, Inc., Carlin-Kelly-Lawson, Carlin Construction & Development Corp., and William V. Lawson, and dismissing the third, fourth and fifth causes of action as against Fred J. Kelly Consultants, Inc., and severing the first and second causes of action against Fred J. Kelly Consultants, Inc., without costs. Plaintiff became an employee of Fred J. Kelly Consultants, Inc. (Consultants) on October 1, 1980, under a two-year employment contract at a salary of $50,000 a year. The contract was signed by Fred J. Kelly on behalf of Consultants. At the time the contract was signed, plaintiff loaned Consultants $25,000. The loan was secured by a six-month note at 15% interest and was signed by Kelly as president of Consultants. In return, plaintiff apparently received shares of Consultants and acted as Consultants' chief financial officer. Plaintiff alleges that he never received any salary or any repayment on this note. Plaintiff's employment was terminated by notice dated April 8, 1982. By that time, Fred J. Kelly, president and major shareholder in Consultants had entered into a joint venture with Carlin Construction & Development Corp. (Carlin-Kelly-Lawson). The complaint alleges seven causes of action, asserted variously against Consultants, Kelly individually and as a member of a joint venture with Carlin Construction & Development Corp. (CCDC), Carlin Construction & Development Corp., and William V. Lawson, an official of CCDC. The first and second causes of action are the only ones that state viable causes of action however, and those have vitality only against Consultants. In the first cause of action repayment of the $25,000 loan is sought. Clearly Consultants as the borrower and maker of the note is the only one liable for its repayment. As indicated earlier, Kelly signed the note in his representative capacity as president of Consultants and incurred no individual liability thereby. Plaintiff's allegations regarding Kelly's agreement to indemnify him in respect to payments he may be called upon to make to liquidate an $18,000 loan to Consultants by Citibank are irrelevant to the $25,000 loan he made to Consultants. Moreover, there is no indication or claim that Rossi has been called upon to make payment on the Citibank loan. The second cause of action

which apparently seeks recovery of unpaid salary, likewise has vitality only against Consultants, the employer and the only one obligated to make salary payments. To the extent that causes of action may exist against Lawson and CCDC for wrongfully inducing Kelly to breach his employment contract with Consultants as alleged in the third cause of action and for the alleged rape of Consultants' assets as set forth in the fifth cause of action, they belong to the corporation Consultants and not to the individual stockholder, Rossi (*Berzin v Litton Inds.*, 24 AD2d 740). Even if it were appropriate, under other circumstances, for Rossi to assert a derivative action on behalf of himself and "all other shareholders" of Consultants, the unquestionable thrust of his objective here is to vindicate his personal rights as an individual and not as a stockholder on behalf of the corporation. (*Greenfield v Clermont Cravat Co.*, 6 NY2d 867, revg 6 AD2d 263.) The fact that plaintiff had disavowed the allegations characterizing the fifth cause of action as a "derivative" suit is unavailing to salvage that cause of action. So too, is the characterization of the claim set forth therein as a "prima facie tort" or "tortious interference with * * * contract" as discussed by our dissenting colleague. The fact is inescapable that the allegations assert a derivative suit since the harm done, if any, by the "defendant Fred J. Kelly and the other defendants * * * enter[ing] into a scheme whereby all the assets of Consultants past, present and future, were assigned to Carlin-Kelly-Lawson", was done to Consultants and if improperly, wrongfully or tortiously done, is actionable by the corporation. The critical allegations of the cause of action are those asserting plaintiff's status as a holder of 40 shares of common stock of Consultants. Completely missing is any allegation that he "had been the victim of fraud, deceit or bad faith practiced upon him * * * so that he — not the corporation — shares in less than the full value of his stock interest * * * [or that the conduct of the defendants] resulted in individual damage to him, as contrasted with damage to the corporation, or were in breach of [a] personal stockholders' agreement or some other determined personal relationship [that would confer upon him] an individual cause of action." (*Greenfield v Denner*, 6 AD2d 263, 270 [dissenting opn of Breitel, J.], revd on dissenting opn [Breitel, J.], 6 NY2d 867). The sixth and seventh causes of actions asserted against Fred J. Kelly likewise must be dismissed. There are no allegations that there was a contract between Fred J. Kelly individually and plaintiff that could be breached as alleged in the sixth cause of action nor are there any allegations in the seventh cause of action sufficient to sustain an action for fraud (see CPLR 3016, subd [b]). Concur — Ross, Fein and Alexander, JJ.

Murphy, P. J., and Carro, J., concur in part and dissent in part in a memorandum by Carro, J., as follows: While we agree that summary judgment should be granted to Kelly Construction, Inc., Carlin-Kelly-Lawson, Carlin Construction and Development Corp. (CCDC) and William V. Lawson, we believe more survives than just the first and second causes of action against Kelly Consultants (Consultants). Specifically, we believe plaintiff's fourth cause of action is viable (wrongful discharge by Consultants) and we find the facts adduced in the record support a cause of action against Fred Kelly, personally, for tortious interference with plaintiff's employment contract or, possibly, prima facie tort. Although the complaint is drawn so inartfully as to be almost unintelligible the facts that coalesce from the two records (read, as they must be on a motion for summary judgment, in the light most favorable to the party opposing the motion) indicate a willful course of conduct by Kelly to appropriate the consultant corporation's business opportunity for the sole purpose of cutting out plaintiff. Consultants is (was) a closely held corporation, with Kelly owning 60% of the stock and plaintiff, 40%. It was formed by Kelly convincing Rossi that he, Kelly, could land a number of lucrative construction

management accounts, if only he had sufficient operating capital. Rossi agreed to this, loaned the corporation $25,000, guaranteed some other loans and deferred receipt of his own salary to the payment of the loans and Kelly's expenses. As the financial officer, Rossi wrote most of the checks and could monitor somewhat Kelly's activities. At a deposition Rossi acknowledged writing the corporate checks for Kelly's rental car, golf course, Metropolitan Club and other expenses, because "A. Basically, Fred was in a tight financial situation. And he needed the money. So the monies went to Fred to pay his rent, to pay his existence. I mean he was the basic part of the company. I mean we needed him to get business and couldn't do business if he had to sleep in the park. So we gave him the money. Q. So you knew Fred's financial circumstances, and you made a voluntary decision to pay him and not you, is that correct? A. That's correct." This went on for a little over a year, with what business Kelly did drum up being insufficient to cover even his expenses. In October of 1981, however, Kelly landed a lucrative deal with Carlin Construction and Development Corporation (CCDC) whereby Consultants would participate as joint venturers with CCDC, and CCDC would underwrite expenses. This was formally set forth in an agreement dated November 25, 1981 and the record also shows a check from Carlin to Consultants, dated October 7, 1981, labeled "loan." CCDC is a huge, well-financed concern and at last Consultants had a business opportunity that promised to bring in enough money to pay Rossi both his back salary and the $25,000 he had loaned Consultants — this deal justified the faith he had in Kelly. In late January of 1982, however, Kelly signed an agreement, personally, to participate in the joint venture and initially receive at least $50,000. CCDC conditioned payment to Kelly upon his first obtaining "general releases of any and all claims from the stockholders of Fred J. Kelly Consultants, Inc." Of course, we know he did not. Instead, by letter of April 8, 1982 Kelly purported to terminate Rossi's employment with Consultants, effective a week later, and demanded that plaintiff tender his shares in Consultants for their $1 par value. The only reason given by Kelly was that "the Corporation is, and has been, virtually bankrupt for a considerable period of time and such services as you would have been called upon to perform never did materialize." Since, by the terms of his employment contract plaintiff was to serve as financial officer of Consultants as well as be a management consultant (with Kelly) on projects under contract to Consultants, and since the November, 1981 agreement with CCDC provided a live opportunity for both sound capitalization of Consultants and a chance for Rossi to actually be a management consultant, Kelly's stated reasons for firing plaintiff were patently false. The real reason, it must be presumed, was to recover the Consultants stock from Rossi so that Kelly could conclude his appropriation from Consultants of the joint venture opportunity. As mentioned, the complaint is poorly drafted. In his fifth cause of action plaintiff "as a shareholder of defendant Consultants on behalf of himself and all of the shareholders of Consultants similarly situated and in the right of Consultants" alleges that Kelly "and the other defendants named" entered into a "scheme whereby all of the assets of Consultants * * * were assigned to Carlin-Kelly-Lawson." While Rossi certainly has standing to assert a stockholder's derivative suit for harm done to the corporation (Business Corporation Law, § 626), it is questionable as to whether he may do so in the same lawsuit in which he seeks to recover personally for harm done to him. And beyond that, a derivative suit really makes little sense in the context of this corporation. In fact, plaintiff disaffirmed such a characterization of his suit in the court below, so notwithstanding his readoption of that position on appeal, we may ignore it. That does not mean, however, that plaintiff is barred from asserting that the corporation was harmed, with the direct result that he was, too. As 60%

shareholder of Consultants, Kelly did not harm the corporation to harm *it,* but to specifically deprive plaintiff. So really, Kelly only took for himself the opportunity of Consultants (thereby harming the corporation) because he would otherwise have had to share his profits with Rossi. We do not believe the law intends the limitation on liability for a corporation to be utilized in this particular way. The choice between allowing a cause of action for prima facie tort or interference with contract largely depends on whether Kelly's action was "improper." In *Guard-Life Corp. v Parker Hardware Mfg. Corp.* (50 NY2d 183, 189), Judge Jones adopted the section 766 of the Restatement of Torts 2d definition of interference with contract: " 'One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.' " Judge Jones explained that " 'improperly' " was selected in preference to the phrase, " 'without justification' " and the factors to be considered include the nature of the conduct of the interferer, the interests of the party interfered with, the relationship between the parties, "the motive and interest sought to be advanced by the one who interferes, the social interest in protecting the freedom of action of that person as well as the contractual interests of the party interfered with, and the proximity or remoteness to the interference of the conduct complained of." (50 NY2d, at pp 189, 190, n 2.) While Kelly's conduct certainly seems to come within the definition of this tort, note that it is not a requirement that one who "improperly interferes" be guilty of any illegal act, although illegality would fit. Prima facie tort, on the other hand, requires "the infliction of intentional harm, resulting in damage, without excuse or justification, by an act or series of acts which would otherwise be lawful." (*Ruza v Ruza,* 286 App Div 767, 769 [quoted in *ATI, Inc. v Ruder & Finn,* 42 NY2d 454, 458 (per Cooke, J.)].) We are not sure whether Kelly's acts amounted to criminal or even civil violation of Federal or State law. We also do not think that question needs to be decided now. Instead, we would merely allow the first, second and fourth causes of action against Consultants, with leave to plaintiff to replead his cause of action for interference with contract against Kelly. (Rossi's third cause of action stated this against CCDC and Lawson only.)